ZION NURSING HOME, INC. ET AL., APPELLANTS, *v.* CREASY, DIR., APPELLEE

[Cite as Zion Nursing Home, Inc. *v.* Creasy (1983), 6 Ohio St. 3d 221.]

(No. 82-750—Decided August 17, 1983.)

*Messrs. Kohnen & Kohnen, Mr. Ralph B. Kohnen, Jr., Mr. James A. Hunt* and *Mr. Scott B. Tollefsen,* for appellants.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, and *Ms. Sheila P. Cooley,* for appellee.

*Per Curiam.* The determinative issue is whether appellants' claim for reimbursement of Medicaid payments, in accordance with the rates in Am. Sub. H.B. No. 475, for the first six months of 1972 filed July 17, 1979, was timely filed. For the following reasons, this court holds that appellants' cause of action is barred because it was not filed within six years of the accrual of the action as required by R.C. 2305.07.[2]

This precise issue, as the court of appeals correctly noted, was recently decided by this court in *State, ex rel. Country Court,* v. *Creasy, supra,* which presented this court with a factual situation identical to the one herein. In denying the request for a writ of mandamus to compel the ODPW Director to review costs reports for 1972 and to apply the reasonable cost method of reimbursement, the Court of Appeals for Franklin County stated in *State, ex rel. Country Court,* v. *Creasy* (Feb. 7, 1980), Franklin App. No. 79AP-594, unreported, as follows:

"There is no dispute that if relators' claim arises from statute, it was not brought within six years of the date the cause of action accrued. That date would appear to be no later than January 1, 1979. Relators filed this action on July 31, 1979. Relators concede that the state has a liability to them which was created by Am. Sub. H.B. 475." That court subsequently concluded that "'* * * relators' claim for reimbursement for the entire year of 1972 is barred by R.C. 2305.07 * * *.'"

This decision was unanimously affirmed by this court on appeal. In so doing, this court stated in *Country Court,* at page 420, as follows:

"R.C. 2305.07 provides: 'Except as provided in section 1302.98 of the Revised Code, an action upon a contract not in writing, express or implied, or *upon a liability created by statute* other than a forfeiture or penalty, shall be brought within six years after the cause thereof accrued.' (Emphasis added.) The 1971 bill is a liability created by statute and, as such, is subject to the above six year statute of limitations.

"Appellants' right to the new rates under the 1971 bill derives solely from the appropriation bill. * * *"

In affirming the decision of the court of appeals that the six-year statute of limitations was a bar to the action initiated on July 31, 1979, this court implicitly, if not explicitly, found that the time of accrual of a cause of action for money withheld by the state contrary to Am. Sub. H.B. No. 475 was no later than January 1, 1973.

---

[2] This court held in *State, ex rel. Country Court,* v. *Creasy,* (1980), 62 Ohio St. 2d 419 [16 O.O.3d 446], and both parties so concede, that the six-year statute of limitations found in R.C. 2305.07 controls in the instant case.

This court has carefully considered appellants' arguments, but cannot find any compelling reason to deviate from its prior decision in *Country Court.*

In reaffirming the *Country Court* holding today, a reiteration of a few salient points is appropriate. First, this court has remained mindful of the generally accepted law that a cause of action arising from a statute accrues and the period specified in the statute of limitations begins to run when the violation giving rise to the liability occurs. See *Unexcelled Chemical Corp.* v. *United States* (1953), 345 U.S. 59, 65.

In the instant case, it is particularly critical to identify that violation which gave rise to liability. An examination of appellants' complaint is most revealing. Most significantly, appellants did not premise their cause of action on the ground that the reasonable cost method was used but that ODPW calculated reimbursement incorrectly thereunder. If this retrospective reimbursement had been used, than appellants' assertion that the applicable statute of limitations does not commence until field audits and final settlements are made would be more compelling, for such claims rest on facts that would only come to light after the providers' actual costs were reviewed. Inasmuch as this case does not present a question as to the amount of reimbursement due under the reasonable cost method or what factors comprise reasonable costs, field audits and final settlements were not indispensable in establishing appellee's obligation herein. This factor also distinguishes the situation in the instant case from the situations in the federal cases cited by appellants, and hence this court does not find those cases to be persuasive authority herein.

Rather, appellants premised their claim on the ground that ODPW failed to use the reasonable cost method of reimbursement for the first six months of 1972. In this regard, it is highly pertinent that the providers were on notice as early as February 1972 that they would not be receiving reimbursement for the first six months of 1972 pursuant to the reasonable cost method. ODPW notified providers by a letter dated February 15, 1972, of the change in method of payment and of its intention to continue to reimburse providers on the flat rate method until July 1, 1972, when a cost reporting system and reasonable cost method of reimbursement would be implemented. Additionally, on June 29, 1972, copies of forms and instructions to report costs were supplied by ODPW to the providers, and the acting director concurrently declared in his cover letter of that date that if any application of the cost determination formula resulted in an increased rate of payment to a provider, the increased rate would be applicable to the month in which the operator signed and returned the cost reporting form and all subsequent months.[3]

---

[3] These facts were clearly established in *Three Rivers Convalescent Center, Inc.* v. *Bates* (Aug. 25, 1976), Hamilton C.P. No. A-733864, unreported, as evidenced by the court of appeals' decision therein (affirmed [March 29, 1978], Hamilton App. No. C-76787, unreported). It is prop-

In summary, it was the failure of ODPW to implement the reasonable cost method for the first six months of 1972 as required by Am. Sub. H.B. No. 475 that gave rise to its duty to reimburse, which came to light as soon as that duty was breached, *i.e.,* in 1972 as evidenced above.

Clearly then, this is not a case where appellants are being denied an opportunity to pursue their claim before they knew it existed. Indeed, some similarly situated providers recognized that they had been damaged, timely initiated an action in mandamus against ODPW seeking a writ to compel the department to implement the reasonable cost reimbursement system provided for in Am. Sub. H.B. No. 475 for the entire year of 1972 by filing their complaint on May 24, 1973, and were ultimately successful. See *Three Rivers Convalescent Center* v. *Bates* (March 29, 1978), Hamilton App. No. C-76787, unreported.

It is unclear from the record as to why appellee failed to pay appellants for the six-month period in question pursuant to the reasonable cost method of reimbursement. Although appellee's action cannot be condoned, the fact still remains that appellants sat idle for over six years without bringing an action to enforce their rights. This court cannot, and will not, second-guess the General Assembly's wisdom that six years is a sufficient amount of time to bring a claim such as in the instant case.

As this court recognized in *LaBarbera* v. *Batsch* (1967), 10 Ohio St. 2d 106, 114 [39 O.O.2d 103], "[s]tatutes of limitations are similarly designed to assure an end to litigation and to establish a state of stability and repose." The importance of such statutes has long been recognized:

"Statutes of limitation are vital to the welfare of society and are favored in the law. They are found and approved in all systems of enlightened jurisprudence. They promote repose by giving security and stability to human affairs. An important public policy lies at their foundation. They stimulate to activity and punish negligence. While time is constantly destroying the evidence of rights, they supply its place by a presumption which renders proof unnecessary. Mere delay, extending to the limit prescribed, is itself a conclusive bar. The bane and antidote go together." *Wood* v. *Carpenter* (1879), 101 U.S. 135, 139.

In arriving at this decision today, this court has remained cognizant of these principles and policies.

For the foregoing reasons, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C.J., W. BROWN, PRYATEL and HOLMES, JJ., concur.

---

er for this court to consider such facts, for in his findings of fact and conclusions of law, the trial court judge in the instant case stated as follows: "The record in *Three Rivers* hereby is received into evidence and incorporated into the record of the instant case."

Sweeney, C. Brown and J. P. Celebrezze, JJ., dissent.

Pryatel, J., of the Eighth Appellate District, sitting for Locher, J.

Clifford F. Brown, J., dissenting. The only fair way to administer the reimbursement program as contemplated under Am. Sub. H.B. No. 475 is to conclude that no limitations period commenced until the state determined its final position on reimbursement amounts due. The expiration date of the budget bill is irrelevant to this determination, which looks instead to the time the state completed its audit. Because the practical effect of today's decision is to permit the state to destroy a cause of action by merely delaying performance of its statutory duties, I dissent.

Appellee's legislated duty and liability to appellants under Am. Sub. H.B. No. 475 were to be determined, pursuant to its explicit terms, in accordance with appellee's own departmental rules and regulations. The audit-settlement system established thereunder by appellee Creasy called for the review of cost reports in a multi-step process, involving for each provider a preliminary desk audit, an initial payment adjustment, an on-site field audit, and a final settlement payment. None of these procedures was followed for any member of appellants' class for the calendar year 1972 until late 1977. It is my position that prior to the time these audits were prepared, appellants did not have a cause of action against appellee.

It was only after the field audit and final adjustment phase that each provider knew where appellee stood on reimbursement. It was therefore at this time that final and conclusive liability, which forms the basis for the cause of action, was established. It would be ludicrous for a statute of limitations to begin to run before the claimant had knowledge of the extent, or in some cases the very existence, of damages. See *Amer* v. *Akron City Hospital* (1976), 47 Ohio St. 2d 85, 93 [1 O.O.3d 51] (dissenting opinion, *per* Celebrezze, J.). See, also, *Adams* v. *Sherk* (1983), 4 Ohio St. 3d 37; *O'Stricker* v. *Jim Walter Corp.* (1983), 4 Ohio St. 3d 84. Such a view is also consistent with a long line of federal cases[4] which have examined reimbursement systems for health care services identical to the method utilized herein.

I further disagree with the court's assessment that *State, ex rel. Country Court,* v. *Creasy* (1980), 62 Ohio St. 2d 419 [16 O.O.3d 446], decided the "precise issue" paramount to the present appeal. Conspicuously absent from today's opinion is the actual holding of the fifteen line *Country Court* case: "* * * [a]ppellants' equal protection argument, premised on the diligence of the six nursing homes who brought a timely action, is without merit." *Id.* at

---

[4] *E.g., United States* v. *Pisani* (C.A. 3, 1981), 646 F. 2d 83; *United States* v. *Gravette Manor Homes, Inc.* (C.A. 8, 1981), 642 F. 2d 231; *United States* v. *Withrow* (C.A. 7, 1979), 593 F. 2d 802; *United States* v. *McCarthy* (C.D. Cal. 1980), CCH Medicare & Medicaid Guide, 1980-1981 Transfer Binder, Paragraph 30,807; *United States* v. *White House Nursing Home, Inc.* (M.D. Fla. 1979), 484 F. Supp. 29; *United States* v. *Graham* (S.D. Tex. 1979), 471 F. Supp. 123.

420. In so rejecting the claim that the providers had a right to reimbursement based upon the Equal Protection Clause, the *Country Court* court did no more than acknowledge that Am. Sub. H.B. No. 475 was subject to R.C. 2305.07. The question of when that statute of limitations began to run was apparently neither argued to, nor considered by, that court.

In my view, appellants' cause of action did not arise until the liability became fixed, irrespective of the expiration date of the budget bill. I would therefore reverse the judgment of the court of appeals.

SWEENEY and J. P. CELEBREZZE, JJ., concur in the foregoing dissenting opinion.