The STATE of Ohio ex rel. PETRO, Atty. Gen., Appellee,

v.

MERCOMP, INC., Appellant, et al.

[Cite as *State ex rel. Petro v. Mercomp, Inc.,* 167 Ohio App.3d 64, 2006-Ohio-2729.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 86563.

Decided June 1, 2006.

Jim Petro, Attorney General, and Brett A. Kravitz and Melissa Yost, Assistant Attorneys General, for appellee.

Squire, Sanders & Dempsey, L.L.P., Van Carson, and Jill A. Grinham, and Lianne R. Mantione, for appellant.

MARY EILEEN KILBANE, Judge.

{¶ 1} Mercomp, Inc. appeals from an order of the trial court granting summary judgment in favor of the state of Ohio. It claims that the court erred in granting summary judgment and piercing its corporate veil, by finding individual liability of the company's sole shareholder, by finding Mercomp subject to injunctive relief, and by refusing to conduct an in camera inspection of documents that the state of Ohio claimed were privileged. We affirm.

{¶ 2} The record reveals that in the early 1950s, Harry Rock formed Harry Rock & Co. ("HRC") to buy and sell scrap metal. Several years later and in February 1965, Cleveland Land Development Company ("CLD") was formed and incorporated as a separate entity, but apparently had little responsibility through HRC.

{¶ 3} In the late 1970s, HRC diversified into the landfill business by buying property located at 1329 East Schaaf Road in Brooklyn Heights, Ohio ("the landfill"). The landfill was completed in 1980 and the property was deeded and titled to HRC. Following the completion of the landfill, CLD finally became fully functional and operated to lease the landfill from HRC. CLD, owned jointly by Manny Rock and Howard Bahm, operated the landfill from 1980 through May 1994.

{¶ 4} Shortly before the landfill ceased accepting solid waste and in December 1993, HRC sold all of its assets, with the exception of the landfill and two other properties, and changed its name to Mercomp, Inc. On May 31, 1994, CLD stopped accepting waste at the landfill. From this time forward, the sole function of Mercomp and CLD was to facilitate the closure of the landfill under R.C. Chapter 3734 and Ohio Adm.Code 3745-27.

{¶ 5} During this time period, and actually by 1990, Rock was the sole shareholder of CLD, HRC and Mercomp. By December 1996, CLD was merged into Mercomp, leaving Mercomp as the sole remaining and operational company.

{¶ 6} To facilitate closure of the landfill, Mercomp requested several extensions in order to properly close the landfill. Mercomp's first extension requested until June 30, 1995 to close the facility. Shortly thereafter, however, Mercomp requested a second extension, citing wet weather conditions in both the spring and summer of 1995. The Ohio Environmental Protection Agency ("Ohio EPA") denied the request, but informed both Mercomp and Rock that it would not implement escalated enforcement activities if closure was completed by December 31, 1995.

{¶ 7} Three years after this extended closure deadline, and on April 22, 1998, Mercomp submitted its first Closure Certification Report to the Ohio EPA. The

Ohio EPA informed Mercomp of several deficiencies in this report, and Mercomp submitted an amended closure report on August 30, 1998.

{¶ 8} Mercomp was again informed of deficiencies in its amended report and on February 16, 1999, Mercomp submitted an addendum to its previously submitted report. Due to remaining deficiencies, the Ohio EPA sent Mercomp a Notice of Violation letter advising it of 11 violations of Ohio Adm.Code Chapter 3745–27, citing specifically Mercomp's failure to properly fund a financial assurance instrument, which would provide for the continued postclosure monitoring of the landfill.

{¶ 9} In June 2000, Mercomp submitted a revised Ground Water Sampling and Analysis Plan to the Ohio EPA. After several notices of deficiencies in this plan and in September 2000, the Ohio EPA determined that the revised program was in compliance with Ohio Adm.Code 3745–27–10. However, when the Ohio EPA reviewed the semiannual ground water monitoring report, it determined a statistically significant increase of a leachate and/or leachate-derived substance: an indication that the landfill could be leaking leachate into the groundwater under the landfill.

{¶ 10} In November 2000, the Ohio EPA notified Mercomp that based on its submitted reports and follow-up investigations by the Ohio EPA, closure construction activities had been completed in accordance with Ohio's solid waste rules, and that the postclosure period of the landfill officially began on September 7, 2000.

{¶ 11} The Ohio EPA continued to monitor Mercomp's reports and conduct its own investigations. The Ohio EPA repeatedly submitted notices of violations to Mercomp for environmental and human hazards, and its failure to properly fund a financial assurance program for the landfill.

{¶ 12} On July 18, 2001, the state initiated an enforcement action against Mercomp as a corporation and against Manny Rock as its sole shareholder. The complaint alleged violations of Ohio's solid waste regulations as set forth in Ohio Adm.Code Chapter 3745–27 and governed by R.C. Chapter 3734. The claims were brought specifically against Mercomp and Rock for their failure to (1) establish a financial assurance instrument for the landfill, (2) timely close the landfill, (3) conduct necessary ground water detection at the landfill, and (4) conduct ground water assessment monitoring at the landfill.

{¶ 13} Rock and Mercomp filed a counterclaim for abuse of process, which the trial court later dismissed. The state then voluntarily dismissed two remaining counts of its original complaint and proceeded on the first four claims. Both parties moved for summary judgment on the issue of Rock's individual liability,

and Mercomp and Rock moved for summary judgment on a selective-enforcement claim.

{¶ 14} In February 2003, the trial court granted the state's motion for summary judgment regarding Rock's individual liability and denied Mercomp's selective-enforcement claim, finding that it failed to meet the necessary elements to sustain such a claim. The court also denied Mercomp's motion for an in camera inspection of documents contained in the state's privilege log. In March 2003, Mercomp appealed the denial of summary judgment on the selective-enforcement claim, which this court dismissed for lack of subject-matter jurisdiction.

{¶ 15} In February 2004, a two-week hearing was conducted, and two months later, the trial court issued its findings of fact and conclusions of law, setting forth nine compliance orders and granting injunctive relief and a civil penalty. Mercomp again appealed. This court dismissed the case for lack of a final, appealable order due to the omission of a stated amount of attorney fees.

{¶ 16} The parties collectively resolved the omitted issue of attorney fees and Mercomp filed the instant appeal asserting the assignments of error set forth in the appendix to this opinion.

## I. PIERCING THE CORPORATE VEIL

{¶ 17} In its first assignment of error, Mercomp asserts error in the trial court's grant of summary judgment and claims that there are genuine issues of material fact as to the elements necessary to pierce the corporate veil and find Manny Rock individually liable.

{¶ 18} We review the grant of summary judgment de novo, using the same standard as the trial judge, which requires granting the motion if there is no dispute of material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 95 Ohio St.3d 314, 2002-Ohio-2220, 767 N.E.2d 707.

{¶ 19} Under Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his or her favor. *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, at paragraph three of the syllabus. All doubts must be resolved against the moving party. *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 333, 587 N.E.2d 825.

{¶ 20} A fundamental rule of corporate law is that, normally, shareholders, officers, and directors are not liable for the debts of the corporation.

*Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos.* (1993), 67 Ohio St.3d 274, 287, 617 N.E.2d 1075. An exception to this rule was developed in equity to protect creditors of a corporation from shareholders who use the corporate entity for criminal or fraudulent purposes. "That a corporation is a legal entity, apart from the natural persons who compose it, is a mere fiction, introduced for convenience in the transaction of its business, and of those who do business with it; but like every other fiction of the law, when urged to an intent and purpose not within its reason and policy, may be disregarded." *State ex rel. Atty. Gen. v. Std. Oil Co.* (1892), 49 Ohio St. 137, 30 N.E. 279, paragraph one of the syllabus. Under this exception, the "veil" of the corporation can be "pierced" and individual shareholders held liable for corporate misdeeds when it would be unjust to allow the shareholders to hide behind the fiction of the corporate entity.

{¶ 21} Successfully piercing the corporate veil places personal liability on individual shareholders for the corporation's liabilities. *Yo–Can, Inc. v. Yogurt Exchange, Inc.*, 149 Ohio App.3d 513, 526, 2002-Ohio-5194, 778 N.E.2d 80. The corporate form can be disregarded and individual shareholders held liable for corporate wrongdoing when control is so complete that the corporation has no separate will, mind, or existence (the alter-ego doctrine) and the control is exercised to commit fraud or an illegal act which injures the plaintiff. *Belvedere,* supra, 67 Ohio St.3d at 289, 617 N.E.2d 1075. Each case is to be decided sui generis, on its own facts. *Longo Constr., Inc. v. ASAP Tech. Serv., Inc.* (2000), 140 Ohio App.3d 665, 671, 748 N.E.2d 1164. The state of Ohio alleged that a piercing of the corporation's veil was necessary since Rock's positions as the sole officer, director, and shareholder of Mercomp showed his control of Mercomp's operation. Such control deprived Mercomp of having a separate mind or existence of its own. Rock, however, has maintained that during operation of the landfill, the management of both HRC and CLD were shared between Rock and Howard Bahm, with both Maurice Dachner and Larry Parsons facilitating the day-to-day operations of the landfill.

{¶ 22} In *Belvedere,* 67 Ohio St.3d at syllabus, 617 N.E.2d 1075, the Ohio Supreme Court set forth the test for piercing the corporate veil and assigning individual liability, holding that the corporate form may be disregarded when "(1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong."

{¶ 23} As to the first prong of the *Belvedere* test, the record is replete with evidence of Rock's sole control over Mercomp. From 1990, Rock was the

sole shareholder of every corporation associated with the landfill. The admitted tax returns also showed that between 1990 and 1993, Rock was the sole shareholder and director of HRC immediately prior to its reorganization into Mercomp.

{¶ 24} Since Mercomp was created solely to facilitate the closure of the landfill, Rock's "role as the remaining director and officer of the companies has effectively been to serve as a steward winding-up the corporation's affairs." Rock's own testimony was that the name "Mercomp" was formed from his initials, "M," "E" and "R" and "Comp" for company.

{¶ 25} Even in 1996, when CLD merged with Mercomp, CLD was also wholly owned by Manny Rock. Further, Rock has been the sole shareholder, director, and corporate officer of Mercomp through its entire existence.

{¶ 26} Mercomp cites *Carter–Jones Lumber Co. v. LTV Steel Co.* (C.A.6, 2001), 237 F.3d 745, for the proposition that Ohio courts have looked to factors such as undercapitalization, failure to observe corporate formalities, insolvency at the time the corporation incurs liability, diversion of corporate funds for personal use, and the comingling of shareholder and corporate funds before determining if the corporate veil should be pierced. A plain reading of *Carter–Jones*, however, shows that the court rejected the argument that these factors are necessary, and set forth the following scenario at 749:

> [The shareholder's] argument, if we adopted it, would straightjacket the courts in situations where equity demands that the fiction of corporate personhood be ignored. Consider, for example, a case in which a corporation with a single shareholder kept immaculate corporate records, observed all the formalities required by corporate law, and was adequately capitalized. The shareholder never commingled funds, and never held himself out as personally liable for the corporation's debts. The corporation even does some legitimate business. Can it be that the shareholder is immunized from personal liability if he causes the corporation to commit an illegal act, no matter the degree of his control over the corporation with regard to the illegal act, no matter the harm to third parties, and no matter the other equities? Neither we nor the Ohio courts hold that such immunity exists.

{¶ 27} The second prong of the *Belvedere* test requires that the state of Ohio show that control over the corporation was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity. Mercomp alleges that the trial court's entry determined that mere *allegations* of violations were sufficient to satisfy this prong of *Belvedere*. We disagree.

{¶ 28} In its February 11, 2003 journal entry, the trial court found that "[t]he court, being satisfied that the requirements of *Belvedere* have been met, finds that at trial Manny Rock *may* be held individually liable." (Emphasis added.) The trial court then entered a second journal entry further clarifying the first and finding that "[a]s indicated by the 2–11–03 entry, the court found in the affirmative and that at trial, should plaintiff establish their case, Manny Rock would be found liable. The court *did not find* that Manny Rock *is* liable at this time and thus granted Plaintiff's motion in part." (Emphasis added.) It was only after a full trial in February 2004 that the trial court found that Mercomp and Rock had actually committed the acts that the state had alleged.

{¶ 29} Mercomp also urges this court to reverse the trial court's determination since "no trial court in Ohio has held that mere regulatory violations by a corporation, absent affirmative wrongful conduct by the shareholder, is sufficient to satisfy the second prong of *Belvedere*." We find the state's authority that this is not the case to be persuasive.

{¶ 30} In *State ex rel. Celebrezze v. Dearing* (Nov. 13, 1986), Cuyahoga App. Nos. 51209, 51220, and 51221, 1986 WL 12853, this court dealt with a similar issue when it addressed violations of R.C. Chapter 3734 and determined that two corporate officers were to be held individually liable. This court held:

> Finally, appellants contend that the trial court arbitrarily pierced the corporate veil in assessing civil penalties against the appellants individually. Appellants cite as authority for this proposition the case of *State ex rel. Brown v. Dayton Malleable Inc.* [ (1982), 1 Ohio St.3d 151, 1 OBR 185, 438 N.E.2d 120]. (citation omitted.) A review of that decision does not reveal any basis for concluding that civil penalties may not be assessed against individuals. Under the relevant enabling statute in this case, R.C. 3734.13(C), the trial court is authorized to impose a civil penalty upon the person found to have violated Chapter 3734. See also, *Centennial Ins. Co. v. Vic Tanny Int'l.* (1975), 46 Ohio App.2d 137, 141 [75 O.O.2d 115, 346 N.E.2d 330] (noting that corporate officers may be held personally liable for fraud even though the corporation may also be liable). Accordingly, it was not error to assess civil penalties against the appellants individually for their participation in the Northway operation.

{¶ 31} We therefore find that based upon the evidence submitted in this specific case, a sole shareholder or corporate officer may be held individually liable for a violation of R.C. Chapter 3734 and that under the facts of this case, the state of Ohio has satisfied the elements under the second prong of the *Belvedere* test.

{¶ 32} Under the third prong of *Belvedere*, the state must prove that as a result of Rock's control over Mercomp, it has suffered injury. Mercomp alleges,

similarly, that the trial court relied on the mere allegation of a threat posed by the landfill to meet this third requirement. However, Ohio's environmental statutes are clear that even a threat of danger is an actionable offense.

{¶ 33} R.C. 3734.10 states:

The attorney general * * * where a violation has occurred, is occurring, or may occur, * * * * is occurring, or may occur, * * * shall * * * bring an action for injunction against any person who has violated, is violating, or is threatening to violate any section of this chapter, rules adopted under this chapter, or terms or conditions of permits, licenses, variances, or orders issued under this chapter. * * * The court of common pleas in which an action for injunction is filed has the jurisdiction to and shall grant preliminary and permanent injunctive relief upon a showing that the person against whom the action is brought has violated, is violating, or is threatening to violate any section of this chapter, rules adopted thereunder, or terms or conditions of permits, licenses, variances, or orders issued under this chapter.

{¶ 34} In its April 29, 2004 journal entry, the trial court found that "[e]nforcement of the [sic] Ohio's laws governing solid waste landfills is necessary to ensure the protection of human health and the environment." The court further found that since a risk to human health and the environment remained, it must be guarded against.

{¶ 35} When faced with a similar argument regarding the necessity of proof of actual harm, in *Ackerman v. Tri–City Geriatric & Health Care, Inc.* (1978), 55 Ohio St.2d 51, 9 O.O.3d 62, 378 N.E.2d 145, the Ohio Supreme Court found "[i]t would, therefore, be redundant to require the Director of Health to show irreparable damage or lack of an adequate legal remedy once he has already proved that the conditions which the General Assembly has deemed worthy of injunctive relief exist."

{¶ 36} In its findings of fact and conclusions of law, the trial court found that Mercomp had failed to provide adequate financial assurance, that it had failed to provide for groundwater monitoring, and that with no proper leachate collection, outbreaks have occurred showing volatile organic compounds such as ethylbenzene, barium, and thallium levels, which pose a risk to human health. Not only do such actions threaten both public and environmental health, but by failing to properly address these issues, the Ohio EPA would be responsible for the cost of the clean-up. In accord with the trial court, we find that the injury necessary for the third prong of the *Belvedere* test is the continued failure to protect and monitor the landfill.

{¶ 37} For these reasons, we find that the state submitted sufficient proof of the elements necessary to pierce the corporate veil and obtain judgment against Manny Rock individually.

{¶ 38} Mercomp's first assignment of error lacks merit.

## II. STRICT LIABILITY

{¶ 39} In its second assignment of error, Mercomp alleges error in the trial court's holding that once the corporate veil has been pierced, strict liability flows from a corporation to an individual shareholder. Mercomp asserts that such relief is equitable, not statutory. The state, however, contends that Rock is directly liable, as both a "person" and an "operator" who was in violation of R.C. Chapter 3734 and also due to his liability as previously established under the *Belvedere* test.

{¶ 40} The trial court, in its April 29, 2004 "Findings of Fact and Conclusions of Law," determined that R.C. Chapter 3734 is a public welfare statute providing strict liability for anyone who violates it. It went on to determine that Mercomp is the "owner" of the landfill and that both Manny Rock and Mercomp are "operators" of this same landfill. As an owner of the landfill, Mercomp is liable for all R.C. Chapter 3734 violations at the landfill. *Kays v. Schregardus* (2000), 138 Ohio App.3d 225, 229, 740 N.E.2d 1123. The trial court then found that since the requirements of *Belvedere,* supra, had been met, and that the state demonstrated that the violations occurred, both Mercomp and Manny Rock were strictly liable. Further, and as our previous citation of *State ex rel. Celebrezze v. Dearing,* supra, noted, R.C. Chapter 3734 assigns liability to a "person" whose acts violated both this Chapter and Ohio Adm.Code Chapter 3745–27. Both Rock and Mercomp are also liable as "operators" of the landfill.

{¶ 41} Mercomp's assertion that the trial court should have fashioned an equitable remedy is also unpersuasive. In *State v. Tri–State Group, Inc.,* Belmont App. No. 03 BE 61, 2004-Ohio-4441, 2004 WL 1882567, the court faced a similar issue when injunctive orders were issued both to the individual defendants and their corporation. When faced with the question of an equitable remedy, the court found that "[a] trial court does not need to balance equities when 'an injunction is authorized by a statute designed to provide a governmental agent with the means to enforce public policy.'" Id., quoting *Ackerman v. Tri–City Geriatric & Health Care, Inc.* (1978), 55 Ohio St.2d 51, 56, 9 O.O.3d 62, 378 N.E.2d 145,

{¶ 42} We therefore find that the trial court's order properly issued injunctions to both Mercomp and Manny Rock individually.

{¶ 43} Mercomp's second assignment of error lacks merit.

## III. GROUNDWATER DETECTION

{¶ 44} In its third assignment of error, Mercomp contends that the trial court erred in awarding injunctive relief to the state of Ohio on the basis of the Ohio EPA's allegation that Mercomp failed to properly implement groundwater detection, assessment, and monitoring programs. It further alleges that the Ohio EPA's interpretation and application of the groundwater monitoring regulations made compliance impossible.

{¶ 45} Mercomp contends that it began its own groundwater detection monitoring program in 1996. Throughout the course of its inspections, Mercomp maintained that it conducted 14 separate sampling events, which produced over 150 individual samples, but that in spite of this effort, the Ohio EPA refused to accept the conditions or grant a variance from certain monitoring requirements that would allow them to account for other effects. It therefore claims that as both a legal and practical matter, the trial court cannot enjoin them to comply with groundwater detection and assessment monitoring regulations when compliance cannot be achieved.

{¶ 46} Mercomp cites Ohio Adm.Code 3745–27–10(E),[1] entitled "Ground water monitoring program for a sanitary landfill facility," and claims that when it notified the Ohio EPA and developed and implemented a groundwater quality assessment monitoring program, it complied with this section. Evidence presented at trial, however, indicates that Mercomp did not comply with the required monitoring program, and that any complaint of impossibility was inaccurate.

{¶ 47} In the trial court's findings of fact, it noted that groundwater assessment monitoring had not been conducted at the landfill since April 2002. It further noted that Mercomp's own consultant, Dan Brown, testified that under the regulations, Mercomp should currently be conducting assessment monitoring at the landfill. The trial court went on to find that:

> Under the ground water proposal submitted by [Mercomp's] consultant, Dan Brown, [Mercomp] would only perform one monitoring event per year at the Landfill, even though Dan Brown agreed that the regulations require semiannual monitoring events.
>
> * * *
>
> Since July 2000, [Mercomp has] not submitted an alternate source demonstration request per Ohio Adm.Code 3745–27–10(D)(7)(c) [Ohio Admin. Code 3745–27–10(D)(7)(c)(ii) under the 2003 solid waste rules] or Ohio Admin. Code 3745–27–10(E)(7)(b)[Ohio Admin. Code 3745–10(E)(9)(b) under the 2003 solid waste

---

1. While Mercomp's brief, page 33, states it complied with Ohio Adm.Code 3745–27–11, it appears that it meant to cite Ohio Adm.Code 3745–27–10 to show compliance.

rules] to demonstrate that statistically significant constituents detected in ground water underlying the Landfill are due to a source of contamination other than the Landfill.

\* \* \*

Since 2000, Defendants have not submitted a written request to the Director of the Ohio EPA for a variance or exemption related to ground water monitoring.

{¶ 48} It is clear from the evidence presented, and from the trial court's findings of fact, that Mercomp did not even attempt to comply with the regulations. Mercomp's own expert even found that its submitted monitorings were insufficient for compliance. While Mercomp has repeatedly claimed an impossibility of compliance, the Ohio Supreme Court in *Quality Ready Mix, Inc. v. Mamone* (1988), 35 Ohio St.3d 224, 229, 520 N.E.2d 193, has held that "the doctrine of legal impossibility, while relevant to the enforcement of contractual obligations, has no application to the performance of responsibilities imposed by statute."

{¶ 49} Compliance with the statute is mandatory. Further, and even in light of this mandatory compliance, there is no evidence to indicate that compliance *was* an impossibility as Mercomp simply failed to adhere to the outlined requirements and adopted its own, less stringent, testing system. We therefore find that the trial court's order of injunctive relief was appropriate.

{¶ 50} Mercomp's third assignment of error lacks merit.

## IV. IN CAMERA INSPECTION

{¶ 51} In its final assignment of error, Mercomp submits error in the trial court's refusal to conduct an in camera inspection of certain documents.

{¶ 52} The state of Ohio asserts that this assignment of error is moot because it relates to Mercomp's defunct selective-enforcement counterclaim, which was dismissed in February 2003. Mercomp admits that its selective-enforcement claim was dismissed and that it did not appeal this dismissal, but that since it waived selective enforcement as an affirmative defense, the claim for an in camera inspection is nonetheless valid.

{¶ 53} We first note that under Ohio law, it is well established that the trial court is vested with broad discretion when it comes to matters of discovery, and that the "standard of review of a trial court's decision in a discovery matter is whether the court abused its discretion." *Mauzy v. Kelly Serv., Inc.* (1996), 75 Ohio St.3d 578, 592, 664 N.E.2d 1272. Upon a showing of an abuse of that discretion, the lower court's decision will be reversed. *Toney v. Berkemer* (1983), 6 Ohio St.3d 455, 6 OBR 496, 453 N.E.2d 700, syllabus. For a party seeking to overturn the lower court's discovery ruling, the aggrieved party

must present evidence that the lower court's actions were "unreasonable, arbitrary, or unconscionable." See *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. The debate at hand relates to two specific documents furnished by the state during discovery. Mercomp was provided two Ohio EPA memoranda that indicated that personnel in the Division of Solid and Infectious Waste Management were concerned about Manny Rock's age as well as the status of both his and Mercomp's assets. The first memorandum, dated April 4, 2000, included an enforcement strategy concerning Mercomp's postclosure obligations. The second memoranda, dated July 11, 2000, advised that a referral to the Ohio Attorney General's Office was necessary for a failure to comply with the approved closure plan.

{¶ 54} Mercomp alleges that both memorandum infer that the state used Rock's advanced age as a factor in deciding to sue Rock individually. A vague reference that these documents may or may not contain information that Mercomp believes relevant, on a claim that the trial court had previously determined, fails to meet the required elements for selective enforcement under *State v. Flynt* (1980), 63 Ohio St.2d 132, 17 O.O.3d 81, 407 N.E.2d 15. Mercomp has not appealed the denial of this claim and instead seeks access to the same information under the cloak of an affirmative defense. We find that Mercomp has failed to put forth sufficient evidence to prove that the trial court abused its discretion in failing to allow an in camera inspection for documents relating to a claim that the court dismissed, and this denial was not appealed.

{¶ 55} Mercomp's fourth and final assignment of error lacks merit.

{¶ 56} The judgment of the trial court is affirmed.

Judgment affirmed.

FRANK D. CELEBREZZE JR., P.J., and ANTHONY O. CALABRESE, JR., J., concur.

## APPENDIX A:

## ASSIGNMENTS OF ERROR

I. The trial court erred in granting summary judgment in favor of state of Ohio by piercing defendant-appellant Mercomp Inc.'s corporate veil.

II. The trial court erred in holding that strict liability flows from a corporation to an individual shareholder once the corporate veil has been pierced.

III. The trial court erred in holding that appellants-defendants are subject to injunctive relief on the basis of Ohio EPA's allegation that appellants-defendants failed to properly implement a groundwater detection monitoring program and failed to implement a groundwater assessment monitoring program.

IV.  The trial court erred in denying appellants-defendants' motion requesting that the trial court conduct an in camera inspection of documents the state of Ohio has asserted are privileged.