[Cite as *Cleveland v. Embassy realty investments, Inc.*, 2018-Ohio-2513.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 105091**

---

**CITY OF CLEVELAND**

PLAINTIFF-APPELLEE

vs.

**EMBASSY REALTY INVESTMENTS,
INC., ET AL.**

DEFENDANTS-APPELLANTS

---

**JUDGMENT:**
AFFIRMED IN PART; REVERSED IN PART AND REMANDED

---

Civil Appeal from the
Cleveland Municipal Court
Case No. 2014 CVH 010418

**BEFORE:** Kilbane, P.J., McCormack, J., and Stewart, J.

**RELEASED AND JOURNALIZED:** June 28, 2018

**ATTORNEY FOR APPELLANTS**

Richard H. Drucker
820 West Superior Avenue - Suite 800
Cleveland, Ohio    44113

**ATTORNEYS FOR APPELLEE**

Barbara Langhenry
City of Cleveland Law Director
601 Lakeside Avenue, Room 106
Cleveland, Ohio 44114

David M. Douglass
Thomas A. Marino
Douglass & Associates Co., L.P.A.
4725 Grayton Road
Cleveland, Ohio 44135

Lawrence J. Roach
55 Public Square - Suite 1717
Cleveland, Ohio 44113-1901

MARY EILEEN KILBANE, P.J.:

{¶1}  Defendant-appellant, John E. Barnes, Jr. ("Barnes"), appeals from the Cleveland Municipal Court's decision granting summary judgment in favor of plaintiff-appellee, the city of Cleveland ("the city"). For the reasons set forth below, we affirm in part, reverse in part and remand.

{¶2}  In October 2005, Barnes registered the trade name Embassy Realty Investments ("Embassy") and purchased a vacant commercial building located at 3902 Lee Road in Cleveland, Ohio ("the property"). Barnes purchased the property from the Southeast Cleveland Church of Christ ("Southeast") for $15,000. Seven years before Barnes purchased the property from Southeast, the city's director of building and housing determined the property was a public nuisance and issued notices of condemnation and demolition to Southeast. The city sent these same notices to Barnes at his tax mailing address after he acquired the property.

{¶3}  Less than six months after Barnes purchased the property from Southeast, he entered into a 12-year lease agreement with Clear Channel Outdoor, Inc. ("Clear Channel"), which allowed Clear Channel to maintain a billboard on the property. The lease provided for an initial one-time advance payment of $45,000 upon execution of the lease agreement and annual rent of $1,250, paid in monthly installments of $104.17.

{¶4}  In January 2007, the city issued notice to Barnes of various building code violations existing on the property and for conducting work without the necessary permits. The city subsequently issued a notice of condemnation to Barnes and posted the notice at the property.

{¶5} In December 2008, Barnes incorporated Embassy and transferred the property to Embassy by quitclaim deed. The deed recorded with the Cuyahoga County Auditor reflects that Embassy paid no consideration for the property. Barnes claims, however, that Embassy issued a cognovit note to him in the amount of $150,000 as consideration. The cognovit note identifies Barnes as president, secretary, and treasurer of Embassy; it further lists Barnes and his father, John Barnes, Sr., as the only two members of Embassy's board of directors. Barnes acknowledges he is Embassy's sole shareholder. After transferring his interest in the property to Embassy, Barnes remained lessor to Clear Channel and continued to personally receive monthly lease payments from Clear Channel.

{¶6} In August 2009, the city's contractor began demolition of the building on the property. Demolition was temporarily halted when the common pleas court issued a temporary restraining order to Barnes in a separate matter. A few days after issuing the restraining order, the common pleas court granted the city's request to dissolve the restraining order, and the city's contractor completed demolition.

{¶7} In July 2011, Barnes and Embassy filed a complaint against the city in federal district court, alleging various constitutional violations related to demolition of the property. *Embassy Realty Invests., Inc. v. Cleveland*, 976 F.Supp.2d 931 (N.D.Ohio 2013). The district court granted summary judgment in favor of the city on Barnes and Embassy's claims, but declined to exercise jurisdiction over the city's counterclaim for demolition costs. *Id.* at 945.

{¶8} In July 2014, the city filed its initial complaint in the present matter, seeking its costs for demolition of the property from both Embassy and Barnes. In December 2015, the municipal court granted the city's motion for partial summary judgment as to Embassy, entering

judgment against it in the amount of $14,036, plus collection costs and $3,509 in attorney fees, with statutory interest from the date of demolition.

{¶9} In April 2016, the trial court granted the city's request to amend its complaint against Barnes. In the amended complaint, the city alleges that Barnes had complete control over Embassy and used its corporate form to "commit fraudulent and/or unlawful acts against [the city]." The city's amended complaint sought to pierce the corporate veil of Embassy to hold Barnes liable for the city's judgment against Embassy for the cost of demolition. Barnes subsequently moved to dismiss the city's amended complaint. In May 2016, the trial court denied Barnes's motion to dismiss.

{¶10} Later in May 2016, the city filed partial summary judgment as to Barnes. In September 2016, the municipal court granted the city's motion for summary judgment, and entered judgment against Barnes identical to that it previously rendered against Embassy.

{¶11} It is from this order that Barnes appeals, raising the following five assignments of error for review:

### Assignment of Error One

The trial court erred when it denied [Barnes's] motion to dismiss on the ground that [the city] failed to commence its causes of action within the [four-year statute of limitations] as mandated by [R.C.] 1336.09.

### Assignment of Error Two

The trial court erred when it denied [Barnes's] motion to dismiss on the ground that sections 3103.09(k) and 367.08(b) of the [Cleveland Codified Ordinances] only authorized [the city] to collect demolition costs from the named property owner on the date of the demolition of August 7, 2009[,] and thus, [the city] cannot collect demolition costs from [Barnes] and this matter should have been dismissed against him.

### Assignment of Error Three

The trial court erred when it denied [Barnes's] motion to dismiss on the ground that [the city] failed to join a necessary party to the action herein, [Southeast], which is jointly and severally liable for demolition costs pursuant to sections

3103.09(k) and 367.08(b) of the [Cleveland Codified Ordinances] only authorized [the city] in that it was an owner in the chain of title of the subject realty after the service of the notice of condemnation, and thus, this case should be dismissed.

## Assignment of Error Four

The trial court erred when it granted summary judgment against [Barnes] on the ground that [Barnes] committed fraud by transferring his interest in the subject premises to [Embassy] pursuant to the doctrine established in *Belvedere Condominium Owners' Assn. v. R.E. Roark Cos.*, 67 Ohio St.3d 274, [1993-Ohio-119, 617 N.E.2d 1075], but failed to commence its causes of action within the [four-year statute of limitations] as mandated by [R.C.] 1336.09.

## Assignment of Error Five

The trial court erred when it granted the motion for summary judgment against [Barnes] on the grounds that genuine issues of material fact prevail as to whether [Barnes] committed fraud by transferring his interest in the subject premises to [Embassy] pursuant to the doctrine established in [*Belvedere*].

## Barnes's Motion to Dismiss

{¶12} In the first three assignments of error, Barnes contends the trial court erred in denying his motion to dismiss the city's amended complaint. He presents numerous arguments in support of this contention, including the expiration of the statute of limitations under R.C. 1336.09. Barnes also asserts that the city's codified ordinances do not authorize it to collect demolition costs from him because he did not own the property at the time of demolition. He further argues that the trial court should have dismissed the matter for the city's failure to join Southeast as an indispensable party under Civ.R. 19.

{¶13} This court's review of a motion to dismiss under Civ.R. 12(B)(6) is de novo. *Thomas v. Jackson Hewitt, Inc.*, 192 Ohio App.3d 732, 2011-Ohio-618, 950 N.E.2d 578, ¶ 7 (8th Dist.), citing *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5. In resolving a Civ.R. 12(B)(6) motion, a trial court is confined to the allegations contained

in the complaint and, as an appellate court, we must independently review the complaint to determine if dismissal is appropriate. *Id.*

Statute of Limitations

{¶14} In the first assignment of error, Barnes argues that the trial court should have dismissed the present matter because it was not commenced within the four-year statute of limitations prescribed under R.C. 1336.09. In the fourth assignment of error, Barnes makes the same argument and asserts that the trial court should have denied the city's motion for summary judgment because the four-year statute of limitations had expired. The city disagrees, contending that the six-year statute of limitations under R.C. 2305.07 applies. We agree with the city.

{¶15} We determine the applicable statute of limitations "not from the form of pleading or procedure, but from the gist of the complaint." *Hibbett v. Cincinnati*, 4 Ohio App.3d 128, 131, 446 N.E.2d 832 (1st Dist.1982). Barnes, focusing on the city's argument that the 2008 property transfer was a "sham," contends the applicable statute of limitations is for fraudulent transfer claims under R.C. 1336.09. A review of the amended complaint demonstrates that the city does not rely on a theory of fraudulent transfer in arguing Barnes should be held liable, but rather alleges that Embassy was Barnes's alter ego and that Barnes should be held liable for the city's judgment against Embassy under a theory of piercing the corporate veil.

{¶16} The city, relying on the Cleveland Municipal Court Housing Division's decision in *Cleveland v. Bumpers*, Cleveland M.C. No. 2014 CVH010024 (Sept. 25, 2014), argues that because liability for demolition costs is created by state statute and city ordinance, the applicable statute of limitations is six years as provided in R.C. 2305.07.

{¶17} R.C. 2305.07 provides, in relevant part:

[A]n action * * * upon a liability created by statute other than a forfeiture or penalty, shall be brought within six years after the cause thereof accrued.

{¶18} In *Bumpers*, the municipal court determined that the six-year statute of limitations under R.C. 2305.07 applies to collection actions for nuisance abatement under R.C. 715.261(B) and Cleveland Codified Ordinance ("C.C.O.") 3103.09, and that a cause of action under those provisions does not accrue until the municipality incurs the cost, e.g., when a property is demolished and the nuisance abated. *Id.*, citing *Zion Nursing Home, Inc. v. Creasy*, 6 Ohio St.3d 221, 224, 452 N.E.2d 1272 (1983) ("[A] cause of action arising from a statute accrues and the period specified in the statute of limitations begins to run when the violation giving rise to the liability occurs.").

{¶19} Here, the property was demolished in August 2009, and the city brought the present action to recover its demolition costs under C.C.O. 3103.09 in July 2014. Thus, the city brought this action within the six-year statute of limitations under R.C. 2305.07, and the trial court did not err in denying Barnes's motion to dismiss on the basis of the statute of limitations.

{¶20} Accordingly, the first and fourth assignments of error are overruled.

C.C.O. 3103.09

{¶21} Barnes's second and third assignments of error focus on a 2011 amendment to C.C.O. 3103.09, the ordinance under which the city is authorized to collect its costs for nuisance abatement.

{¶22} As an initial matter, we note that the former version of C.C.O. 3103.09, in effect in August 2009 when the building on the property was demolished, controls. Former C.C.O. 3103.09 provided, in pertinent part:

(j) Costs.

(1) Any and all expenses or costs incurred under this section for the removal * * * of a building or structure shall be paid by the owner of such building or structure[.]

* * *

(4) Notwithstanding the method of collection set forth in this division, the Director of Law may take any action necessary to collect the costs of demolition or boarding from the owner or other responsible party.

Former C.C.O. 3103.09, effective May 20, 2002.

{¶23} Although the city instituted the present action in 2014, after the effective date of the current version of C.C.O. 3103.09, the city asserts that it brings this action under the former version of the statute, in effect at the time of the demolition. Notably, the city's initial complaint pled that Embassy and Barnes were both directly, jointly, and severally liable for demolition costs, whereas the amended complaint seeks to pierce the corporate veil of Embassy to attach liability to Barnes.

{¶24} Barnes asserts that former C.C.O. 3103.09 only authorized the city to bring suit to collect demolition costs against the named property owner. Therefore, he argues that because he was not the record title owner at the time of demolition, he cannot be held responsible for demolition costs under the new, amended law as an owner "in the chain of title from the time of receipt of a notice of condemnation until demolition." C.C.O. 3103.09(k)(2). He argues to hold otherwise would constitute an ex post facto violation of the Ohio Constitution.

{¶25} We find this argument unpersuasive. In asserting this argument, Barnes ignores language of former C.C.O. 3103.09 providing that the city's law director "may take any action necessary to collect the costs of demolition or boarding from the owner *or other responsible party*." (Emphasis added.) Former C.C.O. 3103.09(j)(4). The city argues that Barnes was the "alter ego" of Embassy and is responsible for Embassy's failure to remedy the housing code

violations that ultimately resulted in demolition of the property. Additionally, as discussed above, the city's amended complaint seeks to pierce the corporate veil of Embassy to hold Barnes liable, rather than asserting a direct theory of liability against Barnes.

**{¶26}** Barnes further contends that, under the current version of the statute, Southeast is jointly and severally liable and an indispensable party to this action under Civ.R. 19(A). He argues that the trial court should have granted his motion to dismiss under Civ.R. 19 for the city's failure to join Southeast.

**{¶27}** As discussed above, Barnes purchased the property from Southeast, the owner of the property at the time the city first issued a notice of condemnation in 1998. Barnes relies on language of the current version of C.C.O. 3103.09(k)(2), which provides that

> [a]ny and all owners of a building or structure, who appear in the chain of title from the time of receipt of a notice of condemnation until demolition of the building or structure, shall be jointly and severally responsible for all costs and expenses incurred relating to the demolition and all costs and expenses of prosecution or collection related thereto.

**{¶28}** He argues that under the current version of the ordinance, Southeast is a necessary party under Civ.R. 19 that should have been joined. We find this argument unpersuasive. As discussed above, the city brings this action under the former version of C.C.O. 3103.09 that was in effect at the time of the demolition. Under the former version of the ordinance, Southeast, and Barnes himself, are not jointly and severally liable as owners in the chain of title after condemnation of the building on the property.

**{¶29}** In support of this argument, Barnes cites to Civ.R. 19(A)(1), which provides that "[a] person who is subject to service of process shall be joined as a party in the action if * * * in his absence complete relief cannot be accorded among those already parties[.]"

**{¶30}** This court has held that an obligor who is jointly and severally liable is not necessarily a party who is needed for just adjudication under Civ.R. 19(A). *W. 11th St. Partnership v. Cleveland*, 8th Dist. Cuyahoga No. 77327, 2001 Ohio App. LEXIS 481, 15-16 (Feb. 8, 2001). The trial court should order the joinder of a joint and several tortfeasor if the party meets one of the criteria set out in Civ.R. 19(A). *Id.*

**{¶31}** Barnes states that "[c]learly, [Southeast is] a necessary and indispensable party to [this action]," but fails to demonstrate that in its "absence complete relief cannot be accorded among those already parties." Civ.R. 19(A)(1). We do not find that the absence of Southeast prevented complete relief from being accorded to the existing parties to this case.

**{¶32}** Based on the foregoing, we find that the trial court did not err in denying Barnes's motion to dismiss the city's amended complaint for failure to join Southeast. Accordingly, the second and third assignments of error are overruled.

### Piercing the Corporate Veil

**{¶33}** In the fifth assignment of error, Barnes argues that the trial court erred in granting the city's motion for summary judgment against him. He asserts that his conduct did not amount to fraud, and therefore, the trial court erred in piercing the corporate veil of Embassy to hold him liable for the city's judgment against Embassy.

**{¶34}** We review an appeal from a grant of summary judgment under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate. *Kestranek v. Crosby*, 8th Dist. Cuyahoga No. 93163, 2010-Ohio-1208, ¶ 14.

**{¶35}** In *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998), the Ohio Supreme Court stated the appropriate test as follows:

> Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

(Citations omitted.)

**{¶36}** Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(D); *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385, 667 N.E.2d 1197 (1996). Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 604 N.E.2d 138 (1992).

**{¶37}** This court has recognized "[a] fundamental rule of corporate law is that, normally, shareholders, officers, and directors are not liable for the debts of the corporation." *State ex rel. Petro v. Mercomp, Inc.*, 167 Ohio App.3d 64, 2006-Ohio-2729, 853 N.E.2d 1193, ¶ 20 (8th Dist.), citing *Belvedere Condominium Unit Owners' Assn.*, 67 Ohio St.3d 274, 287, 1993-Ohio-119, 617 N.E.2d 1075. In *Dombroski v. WellPoint, Inc.,* 119 Ohio St.3d 506, 2008-Ohio-4827, 895 N.E.2d 538, the Ohio Supreme Court explained the exception to this general principle, noting that shareholders are not absolutely immune from liability for the actions of their corporations, and that the "veil" of a corporation may be pierced where it would be unjust to allow a shareholder to hide behind corporate protections. The *Dombroski* court further explained:

"[L]ike every other fiction of the law, when urged to an intent and purpose not within its reason and policy, [the corporate form] may be disregarded." *State ex rel. Atty. Gen.* [*v. Std. Oil Co.*, 49 Ohio St. 137, 177, 30 N.E. 279 (1892),] at paragraph one of the syllabus. Shareholders may thus be held liable for their own bad acts notwithstanding the protections afforded by the corporate form when they use the corporation "for criminal or fraudulent purposes" to the detriment of a third party. *Belvedere* [at 289]. Piercing the corporate veil in this manner remains a "rare exception," to be applied only "in the case of fraud or certain other exceptional circumstances." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475, 123 S.Ct. 1655, 155 L.Ed.2d 643.

*Id.* at ¶ 17.

{¶38} In *Belvedere*, the Ohio Supreme Court established a three-prong test for courts to apply when deciding whether to pierce the corporate veil:

The corporate form may be disregarded and individual shareholders held liable for wrongs committed by the corporation when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.

*Belvedere* at paragraph three of the syllabus.

{¶39} The *Dombroski* court modified the second prong of the *Belvedere* test, holding that in order "to fulfill the second prong of the *Belvedere* test for piercing the corporate veil, the plaintiff must demonstrate that the defendant shareholder exercised control over the corporation in such a manner as to commit fraud, an illegal act, or a similarly unlawful act." *Dombroski* at _ 29. The Supreme Court cautioned that courts should apply this limited expansion of the

piercing-the-corporate-veil test cautiously and only in instances of extreme shareholder misconduct. *Id.*

{¶40} The first prong of the *Belvedere* test requires the city to show that Barnes had such a level of control over Embassy that it was indistinguishable from or the "alter ego" of Barnes. *Belvedere,* 67 Ohio St.3d at 288, 1993-Ohio-119, 617 N.E.2d 1075. Ohio courts consider various factors to determine the extent to which a party sought to be held personally liable exercised dominance and control over the corporation, including:

(1) grossly inadequate capitalization, (2) failure to observe corporate formalities, (3) insolvency of the debtor corporation at the time the debt is incurred, (4) shareholders holding themselves out as personally liable for certain corporate obligations, (5) diversion of funds or other property of the company property for personal use, (6) absence of corporate records, and (7) the fact that the corporation was a mere facade for the operations of the dominant shareholder(s).

*Robert A. Saurber Gen. Contr., Inc. v. McAndrews*, 12th Dist. Butler No. CA2003-09-239, 2004-Ohio-6927, ¶ 27, citing *LeRoux's Billyle Supper Club v. Ma*, 77 Ohio App.3d 417, 422-423, 602 N.E.2d 685 (6th Dist.1991). Although these factors are instructive, their presence is not required to pierce the corporate veil "where equity demands that the fiction of corporate personhood be ignored." *Mercomp*, 167 Ohio App.3d 64, 2006-Ohio-2729, 853 N.E.2d 1193, at ¶ 26, citing *Carter-Jones Lumber Co. v. LTV Steel Co.*, 237 F.3d 745, 749 (6th Cir.2001).

{¶41} The record in the present matter is replete with evidence of Barnes's sole control over Embassy and further demonstrates the presence of nearly all of the foregoing factors. Barnes's deposition testimony indicates that Embassy was undercapitalized _ he explained that he put his own money into the property and received a personal loan for improvements to the property prior to transferring the property to Embassy. The evidence presented by the city demonstrates that, apart from Barnes's filing articles of incorporation for Embassy with the Ohio Secretary of State, no other corporate formalities were observed. Barnes admits that Embassy kept minimal

corporate records and had no separate bank account — he acknowledged the lease payments from Clear Channel continued to be paid to him personally after Embassy purchased the property.

**{¶42}** Additionally, Barnes stipulated that Embassy never filed a federal or state tax return, and that Embassy generated no income from its inception through the time of demolition. Thus, it is clear that Embassy was insolvent at the time of the demolition. Barnes also testified that after he sold the property to Embassy, he continued to pay the property taxes and property maintenance, including snow removal and having the grass cut.

**{¶43}** Despite the presence of these factors, Barnes denies any fraud related to his transfer of his interest in the property to Embassy. He further argues that he did not commit any fraud in conducting Embassy's affairs, and that he did not incorporate Embassy to defraud the city or any other potential creditor. The city contends, however, that the citations for building code violations and the violation notices issued to both Barnes and Embassy "are clear evidence of illegal and unlawful acts" that satisfy the second prong of the *Belvedere* test. We disagree with Barnes that the city can only pierce the corporate veil by proving fraud. However, we do not find that the city's presentation of the violation notices themselves satisfy the second prong of the test.

**{¶44}** To satisfy the second prong of *Belvedere* and *Dombroski*, the city must show that Barnes exercised control over Embassy in such a manner as to commit fraud or illegal or unlawful acts against the city. *Belvedere*, 67 Ohio St.3d at 289, 1993-Ohio-119, 617 N.E.2d 1075; *Dombroski*, 119 Ohio St.3d 506, 2008-Ohio-4827, 895 N.E.2d 538, at _ 29.

**{¶45}** In *Springfield v. O'Sesco*, 2d Dist. Clark No. 94-CA-45, 1994 Ohio App. LEXIS 5995 (Dec. 28, 1994), the Second District Court of Appeals also considered an appeal from a trial court's summary judgment order allowing a municipality to pierce the corporate veil to hold an

individual named Long _ a corporate officer and sole shareholder _ liable for demolition costs to abate a nuisance on corporately owned property. The Second District held that "[m]aintaining a nuisance is a tort for which an officer may be held liable," but found that the city of Springfield had not presented sufficient evidence demonstrating that Long himself personally maintained the alleged nuisance. Similarly, in the instant case, although we find that Barnes exerted control over Embassy, we do not find the city presented sufficient evidence to support a finding that Barnes personally maintained the nuisance.

{¶46} Although the city presented evidence of Barnes's control over Embassy, from which one could infer that Barnes was personally responsible for Embassy's unlawful act, i.e., the continued failure to remedy the building code violations to avoid demolition, the record lacks evidence demonstrating that Barnes exercised this control over Embassy in such a manner as to commit this unlawful act. *Dombroski* at _ 29.

{¶47} Our de novo review of a summary judgment motion requires us to view the evidence and any inferences to be drawn therefrom in a light most favorable to the nonmoving party. *Grafton,* 77 Ohio St.3d at 105, 671 N.E.2d 241; *Hounshell v. Am. States Ins. Co.*, 67 Ohio St.2d 427, 433, 424 N.E.2d 311 (1981). If after viewing the evidence and any inferences in this light reasonable minds can come to differing conclusions, the motion should be overruled. *Id*.

{¶48} Here, we find that reasonable minds could come to different conclusions as to whether Barnes did in fact exercise his control over Embassy to unlawfully maintain the nuisance.

{¶49} Based on the foregoing, we cannot find that the city presented sufficient evidence to satisfy all elements required to pierce the corporate veil and hold Barnes personally liable. We further find that a genuine issue of material fact exists for trial as to whether Barnes personally maintained the nuisance after he sold the property to Embassy. Therefore, the trial court erred in granting

the city's motion for summary judgment.

**{¶50}** Accordingly, the fifth assignment of error is sustained.

**{¶51}** Judgment affirmed in part, reversed in part, and the matter remanded for further proceedings consistent with this opinion.

It is ordered that appellee and appellant share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, PRESIDING JUDGE

MELODY J. STEWART, J., CONCURS IN JUDGMENT ONLY;
TIM McCORMACK, J., DISSENTS IN PART (SEE SEPARATE OPINION)

TIM McCORMACK, J., DISSENTING IN PART:

**{¶52}** I dissent in part in that I would fully affirm the decision of the trial court.