JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} This is a consolidated appeal. In Cuyahoga App. No. 89977, plaintiff-appellant, John Ruschel ("Ruschel"), appeals the trial court's decision that granted summary judgment in favor of defendant-appellee, Nestle Holdings, Inc. ("Nestle"), as well as several discretionary rulings. In Cuyahoga App. No. 90500, Ruschel appeals the trial court's order of September 26, 2007 that ordered Ruschel to comply with a previous court order to return certain documents to Nestle. For the reasons that follow, we affirm.
 {¶ 2} This action arose following a merger between Nestle and Ralston Purina Company ("Ralston"). The companies entered an "Agreement and Plan of Merger," dated January 15, 2001 (hereafter "merger agreement"), which set forth the terms and conditions of the merger. The merger became effective on December 12, 2001.
 {¶ 3} At the time of the merger, Ruschel was a beneficial owner of 1,000 shares of Ralston common stock, held in book-entry (electronic) form. Ruschel claims that payment on his stock was wrongly delayed until December 18, 2001, and that he is entitled to interest thereon, in addition to other relief. His second amended complaint raised claims of breach of contract, unjust enrichment, conversion, and constructive trust.
 {¶ 4} Ruschel sought to have the matter certified as a class action on behalf of himself and "[a]ll beneficial or book-entry owners of Ralston Purina Company *Page 4 
common stock just before that stock was canceled on December 12, 2001 — where the record owner was Cede Co. as nominee for The Depository Trust Company (DTC)." The trial court never determined class certification as summary judgment was granted to Nestle.
 {¶ 5} In moving for summary judgment, Nestle asserted that Ruschel's breach of contract claim was barred by the clear terms of the merger agreement and that Ruschel's ancillary claims also failed. Nestle argued that the merger agreement provided that upon the surrender of a certificate representing company common stock for cancellation, the holder of such certificate would be entitled to receive merger consideration "without interest." Ruschel argued that the "without interest" language applied only to shareholders who possessed actual negotiable stock certificates, and did not apply to those like him who held their shares in book-entry form. He also claimed that the "without interest" language was not meant to apply where the acquiring company failed to make "good funds" available to presenters in a timely fashion, on or after the effective date of the merger.
 {¶ 6} Ultimately, the trial court agreed with Nestle and granted summary judgment in its favor, finding that the terms of the merger agreement were clear, that "the no interest provision applies to all stockholders of record," and that there was no breach of contract. The trial court also ruled that Ruschel's ancillary claims were without merit.
 {¶ 7} Ruschel filed App. No. 89977, challenging the grant of summary *Page 5 
judgment and several discretionary rulings made by the court. One of those discretionary rulings was an order dated February 14, 2006, that instructed Ruschel to return certain documents to Nestle "on or before February 28, 2006."
 {¶ 8} After the first appeal was filed, Nestle moved the trial court for an order to enforce the February 14, 2006 order for the return of documents and to place the plaintiff's filings that attached these documents under seal. On September 26, 2007, the trial court ordered Ruschel to comply with its earlier order and instructed that the documents which had been attached to Ruschel's opposition brief be placed under seal. Ruschel filed App. No. 90500, challenging the trial court's jurisdiction to enter this order.
 {¶ 9} We address each of the appeals below.
 {¶ 10} App. No. 89977
 {¶ 11} In this appeal, Ruschel challenges the trial court's grant of summary judgment in Nestle's favor and various discretionary rulings. Ruschel raises seven assignments of error for our review. His first three assignments of error relate to the trial court's summary judgment ruling and provide as follows:
 {¶ 12} "1. The trial court erred in granting Nestle's motion for summary judgment."
 {¶ 13} "2. The trial court erred in ruling there is no remedy for the delay in paying the cash owed under the merger agreement to Ralston's book-entry *Page 6 
shareholders."
 {¶ 14} "3. The trial court erred in ignoring that the merger agreement's `without interest' language appears only in connection with the surrender of stock certificates (and only to shareholders whose certificates had to be surrendered physically with a transmittal letter) and in ignoring expert testimony and other evidence that the `without interest' language does not apply to shareholders like plaintiff whose ownership was recorded in electronic (book-entry) form."
 {¶ 15} An appellate court reviews a trial court's grant of summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105, 1996-Ohio-336, 671 N.E.2d 241. De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine if, as a matter of law, no genuine issues exist for trial. Brewer v. Cleveland City Schools (1997),122 Ohio App.3d 378, 701 N.E.2d 1023, citing Dupler v. MansfieldJournal (1980), 64 Ohio St.2d 116, 119-120, 413 N.E.2d 1187.
 {¶ 16} Summary judgment is appropriate where it appears that (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v.Willis Day Warehousing Co., Inc. (1978), 54 Ohio St.2d 64, 66,375 N.E.2d 46; Civ.R. 56(C). *Page 7 
 {¶ 17} The burden is on the movant to show that no genuine issue of material fact exists. Id. Conclusory assertions that the nonmovant has no evidence to prove its case are insufficient; the movant must specifically point to evidence contained within the pleadings, depositions, answers to interrogatories, written admissions, affidavits, etc., which affirmatively demonstrate that the nonmovant has no evidence to support its claims. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293,1996-Ohio-107, 662 N.E.2d 264; Civ.R. 56(C). Unless the nonmovant then sets forth specific facts showing there is a genuine issue of material fact for trial, summary judgment will be granted to the movant.
 {¶ 18} We begin our review with the merger agreement. Section 9.08 of the merger agreement provides that the agreement is to be governed and construed in accordance with Missouri law.
 {¶ 19} Under Missouri law, ordinary rules of contract construction apply. The construction of a contract generally is a question of law for the court to determine. See Pepsi Midamerica v. Harris (Mo.App. 2007),232 S.W.3d 648, 654. "If the contract terms are unequivocal, plain, and clear, the court is bound to enforce the contract as written." MalanRealty Investors v. Harris (Mo. 1997), 953 S.W.2d 624, 626-627, citingSmith v. Lockwood (Mo. App. 1995), 907 S.W.2d 306, 308. Also, "[i]t is not within the province of the court to alter a contract by construction, or to make a new contract for the parties. A court's duty is confined to the interpretation of the contract which the parties have made for themselves, without regard to its wisdom or *Page 8 
its folly, and a court may not read into a contract words which the contract does not contain. The cardinal principle of contract interpretation is to ascertain the intention of the parties and to give effect to that intent. The terms of a contract are read as a whole to determine the intention of the parties and are given their plain, ordinary, and usual meaning." Pepsi Midamerica, 232 S.W.3d at 654
(internal citations and quotations omitted).
 {¶ 20} Here, Article II of the merger agreement addressed the effect of the merger on capital stock. Article II, Section 2.01(c) covered the conversion of company common stock, and provided as follows:
 "(c) Conversion of Company Common Stock. (1) Subject to Sections 2.01(b) and 2.01(d), each issued share of Company Common Stock shall be converted into the right to receive $33.50 in cash (the `Merger Consideration').
 "(2) As of the Effective Time, all such shares of Company Common Stock shall no longer be outstanding and shall automatically be canceled and retired and shall cease to exist, and each holder of a certificate representing any such shares of Company Common Stock shall cease to have any rights with respect thereto, except the right to receive Merger Consideration upon surrender of such certificate in accordance with Section 2.02, without interest"
(Emphasis added.)
 {¶ 21} Section 2.02 provided for the exchange of certificates, stating in relevant part:
 "Section 2.02. Exchange of Certificates. (a) Paying Agent. * * * Parent shall cause the Surviving Corporation to provide to the Paying Agent on a timely basis, as and when needed after the Effective Time, cash necessary to pay for the shares of Company Common Stock converted *Page 9 
into the right to receive cash pursuant to Section 2.01(c) * * *.
 "(b) Exchange Procedure. As soon as reasonably practicable after the Effective Time, the Paying Agent shall mail to each holder of record of a certificate or certificates (the "Certificates") that immediately prior to the Effective Time represented outstanding shares of Company Common Stock which were converted into the right to receive Merger Consideration pursuant to Section 2.01, (i) a letter of transmittal (which shall specify that delivery shall be effected, and risk of loss and title to the Certificates shall pass, only upon delivery of the Certificates to the Paying Agent * * *) and (ii) instructions for use in effecting the surrender of the Certificates in exchange for Merger Consideration. Upon surrender of a Certificate for cancellation to the Paying Agent * * *, together with such letter of transmittal, duly executed, and such other documents as may reasonably be required by the Paying Agent, the holder of such Certificate shall be entitled to receive in exchange therefor the amount of cash into which the shares of Company Common Stock theretofore represented by such Certificate shall have been converted pursuant to Section 2.01, and the Certificate so surrendered shall forthwith be canceled. * * * Until surrendered as contemplated by this Section 2.02, each Certificate shall be deemed at any time after the Effective Time to represent only the right to receive upon such surrender the amount of cash, without interest, into which the shares of Company Common Stock theretofore represented by such Certificate have been converted pursuant to Section 2.01. No interest shall be paid or accrue on the cash payable upon surrender of any Certificate."
(Emphasis added.)
 {¶ 22} Despite the clear language of the merger agreement, Ruschel claims that the "without interest" language did not apply to him or other book-entry shareholders. Ruschel attempts to distinguish shareholders who held their shares in book-entry (electronic) form from shareholders who held negotiable stock certificates, and claims only the latter had to surrender certificates and were subject to the "without interest" language. In support of his argument, Ruschel relies upon *Page 10 
the affidavit of Carl Hagberg, an expert in the merger-payment area, who discusses the custom for paying merger consideration to shareholders holding negotiable stock certificates in contrast to book-entry shareholders. Hagberg further discusses how certain contract terms are customarily treated in the securities industry. We are not persuaded by Ruschel's argument and find no genuine issue exists with respect to the interpretation of the contract, the contract is not ambiguous, and its interpretation is a matter of law.
 {¶ 23} Reading the contract as a whole, it is clear that the surrender requirement was meant to apply to each issued share of company common stock, regardless of the form in which it was held. The merger agreement provided that "each issued share of Company Common Stock" would be converted into the right to receive $33.50 in cash. It further states that at the effective time of the merger, "all such shares of Company Common Stock" would be canceled and "each holder of a certificate representing any such shares of Company Common Stock" would be entitled to receive the merger consideration "upon surrender of such certificate in accordance with Section 2.02, without interest." (Emphasis added.) The contract language sets forth the procedure to be followed, and does not distinguish between those who held their shares in book-entry form and those who held actual certificates.
 {¶ 24} Section 2.02 proceeds to set forth the procedure to be followed to effectuate an exchange of any outstanding shares of company common stock which *Page 11 
were converted into the right to receive merger consideration. Consistent with Section 2.01, Section 2.02(b) indicates that until surrendered, each certificate would be deemed to represent only the right to receive merger consideration, "without interest." This section contemplates a procedure in which the paying agent would first send out a letter of transmittal to record holders, next shareholders would surrender stock certificates representing their shares, and then the shareholders would receive payment.
 {¶ 25} The record also reflects that in April 2001, Ruschel was sent a proxy statement pertaining to the merger. Like the merger agreement, the proxy statement informed Ruschel that his shares of Ralston stock "will be converted at the effective time of the merger into the right to receive $33.50 in cash from Nestle Holdings, without interest."
 {¶ 26} Upon our review, we find that the terms of the merger agreement are plain and clear and apply to all shareholders of record. This includes the "without interest" provision. Insofar as Ruschel relies upon expert testimony to suggest otherwise, when a contract is unambiguous, its construction is a matter of law for the court and "expert" explanation is unnecessary and unwarranted. See Union Elec. Co.v. Metro. St. Louis Sewer Dist. (May. 9, 2007), Mo. App. E.D., Div. Three, Case No. ED88123; Sheet Metal Workers, Local Union No. 24 v.Architectural Metal Works, Inc. (C.A. 6, 2001), 259 F.3d 418, 424 ("the construction of unambiguous contract terms is strictly a judicial function; the opinions of percipient or expert *Page 12 
witnesses regarding the meaning(s) of contractual provisions are irrelevant and hence inadmissible").
 {¶ 27} Furthermore, simply because Ruschel held his shares in book-entry form does not mean that there was no certificate subject to the surrender requirement. Indeed, Ruschel was the beneficial owner of his shares; however, his actual stock certificate was held by The Depository Trust Company ("DTC"). As Ruschel acknowledges in his brief, DTC "was formed pursuant to Congressional mandate for the purpose of owning shares for the beneficial interest of customers. Cede Co. (`Cede') is the name used by DTC to hold shares that it owns. * * * Cede transmits the dividends received by issuers to the beneficial owners, through `participating' or `depository' banks acting as conduits."In re Color Tile, Inc. (C.A. 3, 2007), 475 F.3d 508, 511, quoting its earlier decision in In re Color Tile, Inc. (C.A.3, 2004), 92 Fed. Appx. 846, 847-848.
 {¶ 28} As a beneficial owner of shares held by DTC, Ruschel would be deemed to have surrendered his shares upon a surrender of a certificate by DTC, or such other custodian thereof. See In re THCR/LP Corp. (Feb. 17, 2006), Bankr. D.N.J. No. 04-46898/JHW (rejecting attempt to distinguish record holders from beneficial holders for entitlement to distribution and recognizing that DTC shares could be surrendered to a disbursing agent). According to Jay Gottlieb, a project director in DTC's reorganization department, DTC understood that Cede, as the record shareholder, had to effectuate a surrender of shares in order to receive *Page 13 
merger consideration.
 {¶ 29} Ruschel asserts that since his shares were automatically canceled and retired at the effective time of the merger on December 12, 2001, the $33.50 per share owed to book-entry shareholders should have been ready to wire to DTC by then. In turn, Ruschel claims that the money owed for his shares should have been credited to his account on December 12, 2001. Ruschel also makes much of the fact that Nestle did not have the necessary funding on the date of the merger. He argues that the "without interest" provision is not meant to apply where the acquiring company fails to make "good funds" available to presenters in a timely fashion on or after the effective date of the merger.
 {¶ 30} The evidence in this case reflects that Ralston and Nestle had estimated the total amount of merger consideration and did not know what the exact amount would be until the merger closed. Karin Broadbeck is a Nestle employee who was responsible for overseeing the accumulation of funds for the merger consideration. She stated in her deposition that Nestle had no obligation to send any funds to DTC until it reconciled its shares and made a presentment, which requests a specific amount of money for a specific amount of shares. Jay Gottlieb, of DTC, testified that DTC was required to reconcile the number of shares and that DTC did not make its presentation of the shipment control list until December 14, 2001. DTC's shipment control list requested payment for 265,098,799 shares of Ralston stock, for a total of $8,880,809,766.50. *Page 14 
 {¶ 31} Ruschel's expert, Carl Hagberg, confirmed this customary reconciliation and presentment process in his affidavit. However, he stated that the custom and practice within the securities industry is to pay the cash consideration to DTC and its members on the same date as the presentment. Nevertheless, as provided in the deposition of Jay Gottlieb, who is with the DTC, it is typical to have one, two, or more days pass between the time that DTC provides payment instructions and the date DTC is paid merger consideration.
 {¶ 32} On December 14, 2001, DTC instructed its disbursing agent, Continental Stock Transfer Trust Company ("Continental"), to perform a book-to-book swing, or transfer, of its Ralston shares to Nestle's paying agent, Citibank. Donald Gress, the Vice President and Chief Operating Officer of Continental, stated this in his affidavit. He further stated that on the next business day, Monday, December 17, 2001, Continental effectuated an electronic transaction that confirmed that DTC's Ralston shares were transferred to Citibank. He confirmed that the transfer of shares took place on December 17, 2001.
 {¶ 33} Nestle then liquidated mutual funds on December 17, 2001, and that money was held overnight earning no interest. On Tuesday, December 18, 2001, Citibank paid DTC, and Ruschel was then paid.
 {¶ 34} Upon our review, we find that no breach of contract occurred, that Ruschel was subject to the "without interest" language of the contract, and that Nestle's actions in paying DTC on December 18, 2001 were timely and in *Page 15 
accordance with the merger agreement. We further find that the "without interest" provisions are valid and enforceable and that Missouri's prejudgment interest statute, Mo.Rev.Stat. 408.020, is not applicable to this matter. See AC. Jacobs Co. v. Union Elec. Co. (Mo.App. 2000),17 S.W.3d 579, 585; Manfield v. Auditorium Bar Grill (Mo.App. 1998),965 S.W.2d 262, 269-270. We find no merit to Ruschel's alternative unjust enrichment claim, or his claims for conversion and constructive trust. Accordingly, we find that Nestle was entitled to summary judgment. Ruschel's first, second, and third assignments of error are overruled.
 {¶ 35} Ruschel's fourth and fifth assignments of error provide as follows:
 {¶ 36} "4. The trial court erred in denying as moot plaintiff's motion to deem certain facts admitted — where Nestle clearly represented those same facts in its summary judgment briefing."
 {¶ 37} "5. The trial court erred in denying as moot plaintiff's second motion to compel discovery."
 {¶ 38} Given our disposition of the first three assignments of error, we do not find it necessary to address Ruschel's fourth and fifth assignments of error, which are moot. App.R. 12(A)(1)(c).
 {¶ 39} Ruschel's sixth assignment of error provides the following:
 {¶ 40} "6. The trial court erred in ordering plaintiff to return to Nestle certain allegedly privileged notes produced by Nestle — where the notes show that some of *Page 16 
Nestle's summary-judgment arguments (and testimony by Nestle's Civ.R. 30(B)(5) witness) are not believable."
 {¶ 41} Under this assignment of error, Ruschel challenges the trial court's order of February 14, 2006, which provides the following:
 "Nestle Holdings, Inc.'s [motion] to compel return of privileged documents * * * filed 9/20/2004 is granted. As the Court has granted defendant's motion for summary judgment, plaintiffs are to return all privileged documents to the defendants on or before 2/28/06."
 {¶ 42} Nestle's motion to compel had sought the return of two documents that were produced in discovery which it alleged were subject to the attorney-client privilege and inadvertently produced. The two documents were dated November 14, 2001 and October 5, 2001 and consisted of the handwritten notes of Donald Gosline, a Nestle financial employee.
 {¶ 43} Much of Ruschel's argument focuses on whether the documents in question were privileged. However, the trial court explicitly stated that it was ordering the return of the documents because it had granted summary judgment. The trial court never actually dealt with the privilege issue. Moreover, the privilege issue did not need to be decided and is not pertinent to our review of whether the trial court properly ordered their return upon granting summary judgment.
 {¶ 44} It is well established under Ohio law that a trial court is vested with broad discretion in matters of discovery, and that the "standard of review for a trial court's discretion in a discovery matter is whether the court abused its discretion." *Page 17 State ex rel. Petro v. Mercomp, Inc., 167 Ohio App.3d 64, 76,2006-Ohio-2729, quoting Mauzy v. Kelly Serv., Inc., 75 Ohio St.3d 578,592, 1996-Ohio-265. A party seeking to overturn the lower court's discovery ruling must present evidence that the lower court's actions were "unreasonable, arbitrary, or unconscionable." Mercomp,167 Ohio App.3d at 76-77, quoting Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 45} We find that the trial court did not abuse its discretion in ordering the return of the documents. "Inherent in the power vested in the court to control the discovery process is the recognition that a party has no absolute right to freely use and disseminate the often sensitive information which may come into his possession in the course of discovery." Conley v. Clark Equip. Co. (Mar. 13, 1986), Franklin App. No. 84AP-966. Here, the trial court's order did not prejudice Ruschel in the litigation as the court ordered Ruschel's copies to be returned upon the summary judgment ruling. Ruschel's sixth assignment of error is overruled.
 {¶ 46} Ruschel's seventh assignment of error provides the following:
 {¶ 47} "7. If the trial court's non-ruling on plaintiff's motion for class certification is deemed a denial of that motion (and therefore an appealable matter) then the trial court erred."
 {¶ 48} A review of the record reflects that the trial court granted summary judgment without ever reaching the class certification issue. We find that Ruschel's *Page 18 
motion for class certification was rendered moot upon the trial court's granting of Nestle's motion for summary judgment. Ruschel's seventh assignment of error is overruled.
 {¶ 49} App. No. 90500
 {¶ 50} This appeal was taken from the trial court's order of September 26, 2007 that ordered compliance with its February 14, 2006 order instructing Ruschel to return certain documents to Nestle. The September 26, 2007 order provided:
 "Good cause having been shown, defendant Nestle Holding, Inc.'s motion to compel plaintiff to comply with the Court's February 14, 2006 Order to return two inadvertently produced privileged documents and to place under seal plaintiff's filing attaching those documents is GRANTED."
The order further instructed Ruschel to comply with the previous order and return all copies of the documents in his possession, and instructed that the documents that were attached to Ruschel's brief in opposition to the motion to compel be placed under seal.
 {¶ 51} This court considers the assignments of error out of order to facilitate our review. We begin with Ruschel's second assignment of error that provides the following:
 {¶ 52} "2. The trial court erred in entering an order on September 26, 2007 granting Nestle's motion to compel compliance with the trial court's February 14, 2006 order — where plaintiff's June 11, 2007 appeal of that February 14, 2006 order *Page 19 
deprived the trial court of jurisdiction to enter the September 26, 2007 order."
 {¶ 53} This assignment of error is without merit. "An order issued by a court with jurisdiction must be obeyed until reversed by proper procedure. Bd. of Educ. of Hamilton City School Dist v. HamiltonClassroom Teachers Assoc. (1982), 5 Ohio App.3d 51, 53, 449 N.E.2d 26, citing United States v. United Mine Workers of America (1947),330 U.S. 258, 293, 91 L.Ed. 884, 67 S.Ct. 677. The mere filing of a notice of appeal does not stay the orders of a trial court. Instead, the appellant may obtain a stay by filing a motion therefor with the trial court or with the appellate court." Strong v. Bauman (May 21, 1999), Montgomery App. Nos. 17256, 17414; see, also, State ex rel. State Fire Marshal v.Curl, 87 Ohio St.3d 568, 570, 2000-Ohio-248 (recognizing same);White v. White (1977), 50 Ohio App.2d 263, 272.
 {¶ 54} In this case, the order of the trial court enforcing its prior order for the return of documents was not inconsistent with this court's appellate review. Ruschel never sought to stay the underlying order, and the trial court retained jurisdiction to enforce the same. At the time that the enforcement order was entered, the February 14, 2006 order of the trial court was in full effect, and Ruschel had failed to obey it. Ruschel's second assignment of error is overruled.
 {¶ 55} Ruschel's first assignment of error provides the following:
 {¶ 56} "1. The trial court erred in ordering the named plaintiff to return to Nestle certain privileged notes produced by Nestle in discovery — where the documents show that some of Nestle's summary-judgment arguments and the *Page 20 
testimony of Nestle's Civ.R. 30(B)(5) witness were fabricated."
 {¶ 57} Under this assignment of error, Ruschel incorporates the argument he made in his sixth assignment of error in Cuyahoga App. No. 89977. We overrule this assignment of error for the same reasons previously discussed.
 {¶ 58} Ruschel's third assignment of error provides the following:
 {¶ 59} "3. The trial court erred in creating an after-the-fact rationale for its February 14, 2006 order where the order, when entered, lacked any lawful rationale, and where the trial court's after-the-fact rationale was added after the February 14, 2006 order was on appeal in Appeal No. 89977."
 {¶ 60} Ruschel claims that the trial court improperly modified its prior order and added factual findings. Our review of the September 26, 2007 order reflects that the trial court merely ordered compliance with its prior order. Nestle had filed a motion to compel plaintiff to comply with the court's order to return inadvertently produced privileged documents and to seal plaintiff's filings attaching those documents. The trial court granted this motion and ordered Ruschel to comply with the previous order. To the extent that the trial court indicated that it was granting the motion to comply with its prior order to return two inadvertently produced privileged documents, the trial court's use of this language was the same as that styled in Nestle's motion and at most was superfluous to the order's true intent. Even Ruschel acknowledges in his fifth assignment of error that the trial court's February 14, 2006 order was made solely on the basis that the court had granted summary *Page 21 
judgment. The court's September 26, 2007 order instructed Ruschel to comply with the prior order. Ruschel's third assignment of error is overruled.
 {¶ 61} Ruschel's fourth assignment of error provides the following:
 {¶ 62} "4. The trial court erred in ordering that certain documents be sealed in the record when the record was already transmitted to the court of appeals and no longer in the trial court's control."
 {¶ 63} Ruschel argues that the trial court did not have jurisdiction to order that the documents be placed under seal and that Nestle should have requested this court to place the documents under seal as the documents were already a part of the appellate record.
 {¶ 64} The Ohio Supreme Court has consistently held that "[w]hen a case has been appealed, the trial court retains all jurisdiction not inconsistent with the court of appeals' jurisdiction to reverse, modify, or affirm the judgment." Yee v. Erie County Sheriff's Department (1990),51 Ohio St.3d 43, 44, 553 N.E.2d 1354, citing In re Kurtzhalz (1943),141 Ohio St. 432, 48 N.E.2d 657. We find that the trial court's order to place the documents under seal did not interfere with this court's exercise of its appellate jurisdiction in the appeal. We further recognize that Nestle also filed a motion requesting this court to place the documents under seal, and this court granted the motion.
 {¶ 65} Our review reflects that when Nestle filed its 2004 motion to compel the return of privileged documents, it offered to submit sealed documents for the trial *Page 22 
court's in camera review. Despite the sensitive nature of the documents in question, Ruschel unnecessarily attached them to his brief in opposition rather than requesting the in camera review. Given the unwarranted nature of Ruschel's conduct, we find that the trial court properly exercised its discretion in ordering that the documents attached to Ruschel's brief in opposition be placed under seal.
 {¶ 66} Likewise, Ruschel's conduct in attaching the documents to his appellate brief was in disregard of the order to return the documents. This court will not condone such conduct and has previously ordered the documents placed under seal.
 {¶ 67} We find no merit to Ruschel's argument that the documents should be made available for public inspection because "a properly sealed record is not a `public record' under the exemption found in R.C. 149.43(A)(1)(v)." State ex rel. Cincinnati Enquirer v. Winkler,149 Ohio App.3d 350, 356, 2002-Ohio-4803. Ruschel's fourth assignment of error is overruled.
 {¶ 68} Ruschel's fifth assignment of error provides the following:
 {¶ 69} "5. Since summary judgment was erroneous, the February 14, 2006 order — which the trial court granted solely because `the court has granted defendant's motion for summary judgment' — was likewise erroneous. The trial court compounded this error by entering its September 26, 2007 order that plaintiff `comply with this court's February 14, 2006 Order. . . .'" *Page 23 
 {¶ 70} Having already determined that summary judgment was properly granted, and for reasons already stated herein, we find no merit to this assignment of error. Ruschel's fifth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 JAMES J. SWEENEY, ADMINISTRATIVE JUDGE *Page 1