KAYS, Appellant,

v.

SCHREGARDUS, Dir., Appellee.

[Cite as *Kays v. Schregardus* (2000), 138 Ohio App.3d 225.]

Court of Appeals of Ohio,
Eleventh District, Portage County.

No. 99–P–0066.

Decided June 30, 2000.

*Antonios C. Scavdis,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Ann M. Wood* and *Karl F. Colon,* Assistant Attorneys General, for appellee.

WILLIAM M. O'NEILL, Judge.

In this accelerated calendar appeal, appellant, Roy Kays, Jr. ("Kays"), appeals from a ruling and final order of the Environmental Review Appeals Commission ("ERAC") issued on May 26, 1999. ERAC's order affirmed the previously issued order of Donald Schregardus, Director of the Environmental Protection Agency ("director"), directing Kays to remove or cause to be removed over one million scrap tires (possibly four million) from a property located in Deerfield Township, Portage County, Ohio. The director issued that order on January 7, 1998. The parties waived the hearing before ERAC, and the appeal was decided on the basis of a joint stipulation of facts and the briefs of the parties.

From at least January 1978 until March 1989, the property in question was owned by Mildred Kays Gollan, the mother of appellant Kays. From at least January 1978 until May 1982, all or part of the property was leased by one Columbus Watts, who used the property to dump scrap tires. Columbus Watts is now deceased. In April 1988, Gollan was notified by the Ohio Environmental Protection Agency ("EPA") that the accumulation of scrap tires was in violation Ohio Adm.Code 3745–27–05(C). In July 1988, the Ohio EPA sent correspondence to Gollan's counsel, requesting that she submit an abatement plan within sixty days for the proper disposal of the tires. No plan was submitted. In March 1989, Gollan deeded the property to her son, appellant, Kays.

In March 1990, Kays was notified by the Ohio Attorney General that the matter had been referred to his office for enforcement, and that the office intended to bring a civil action for violations of R.C. Chapter 3734 unless Kays settled by agreeing to a judicially enforceable consent order for the dump's cleanup. From that point on, all attempts by the Attorney General's office to negotiate a consent order have been unsuccessful. In the meantime, in April 1992, Kays conveyed the property to Mender, Inc., an Ohio corporation. Kays was the sole officer, shareholder and director of Mender, Inc. It has never been operated as an active company, nor did it have any employees, office, equipment, or accounts receivable. Its sole asset was the property. Subsequently, the property was transferred again. In April 1993, Mender, Inc. conveyed the property to Princh Development, Inc., which was also owned and controlled by Kays as its sole shareholder, officer, and director. Princh Development is also an inactive corporation. Like Mender, Inc., the property is its sole asset, except that it does receive a $90 per month royalty check for a gas well situated on the property. Princh Development remains the titleholder of the property.

On January 7, 1998, the director issued final findings and orders to both Kays and Columbus Watts, ordering them to remove (or cause the removal of) the scrap tires from the property to a lawfully operated dump within one hundred

and twenty days. The property is an unlicensed and unpermitted solid waste disposal facility as defined by R.C. 3734.01 and Ohio Adm.Code 3745–21–01(C). The director pierced the corporate veil of Princh Development and imposed the order upon Kays personally. The director's determination was based on the findings that the (over) one million tires on the property constitute a threat to public health, safety, or the environment, and a fire hazard, and that the dump did not meet any of the requirements for any exclusion from orders issued pursuant to R.C. 3734.85. Kays did not contest any of those findings; rather, he contested them on grounds similar to those argued by him in the present appeal.

On appeal to ERAC, Kays argued that he could not be held responsible because he was not the owner of the property at the time the tires were being dumped and because he is not the owner of the property now. In reviewing the applicable code section, R.C. 3734.85(A), ERAC found that the statute explicitly authorized the director to impose an abatement order on the owner of the land in cases where that individual is different from the person who caused the accumulation of the scrap tires. Based on the stipulated facts, ERAC also determined that the director acted appropriately in piercing the corporate veil and imposing the order on Kays personally. Consequently, ERAC affirmed the director's final findings and orders. Kays also challenged the constitutionality of the imposition of the director's final findings and orders on two grounds. ERAC dismissed those assignments of error because it does not have jurisdiction to determine the constitutional validity of statutes. From this judgment, Kays timely filed notice of appeal, assigning four errors.

Under R.C. Chapter 3734, appeals to the court of appeals are governed by R.C. 3745.06. Any party adversely affected by a ruling of ERAC may bring the appeal either in the Tenth Appellate District or in the appellate district in which the violation is alleged to have occurred. This matter is properly before this court. Our standard of review, set forth in R.C. 3745.06, is as follows:

"The court shall affirm the order complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it shall reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law."

■ In Kays's first assignment of error, he argues that it was error for the ERAC to affirm the director's order because "appellant [Kays] was not the owner of the property at the time of the accumulation of the scrap tires and was not the person responsible for the accumulation of the scrap tires." Kays argues that the law is intended to make the person responsible for the accumulation of the scrap tires responsible for the cleanup and that it would be "unfair" to impose liability

on an "innocent owner" like himself. Kays is correct in that R.C. 3734.85(A) does direct the director to pursue the party responsible for the accumulation of the tires. However, the section also authorizes the director to issue an abatement order to the landowner as well. In reaching its conclusions of law, ERAC cited the relevant part of R.C. 3734.85(A), which states: "If the person responsible for causing the accumulation of scrap tires is a person different from the owner of the land on which the accumulation is located, the director may issue such an order to the landowner." ERAC concluded that this explicitly authorized the director to issue the order to Kays, noting: "[T]his Commission must follow the statutory framework imposed upon us and cannot deviate from the clear mandates of the law."

There is no language within R.C. 3734.85(A) that distinguishes between the present landowner and the party who owned the land at the time of the accumulation of the tires. The statutory language, in referring simply to the "landowner," speaks of the present landowner. If the intention were to impose liability only on a party who owned the land at the time of the accumulation, additional language would have to have been included in R.C. 3734.85 to indicate that intention. In the absence of such language, the statute must refer to the present landowner. Furthermore, while R.C. 3734.85(A) requires the director to pursue the party responsible for the accumulation of the tires, it also states, "[f]ailure of the director to make diligent efforts to ascertain the identity of the person responsible for causing the accumulation of scrap tires or to initiate an action against the person responsible for causing the accumulation shall not constitute an affirmative defense by a landowner to an enforcement action initiated by the director under this division requiring immediate removal of any accumulation of scrap tires." ERAC's conclusion was supported by the evidence and is in accordance with law. Kays's first assignment of error is without merit.

Before addressing the constitutional issues raised in Kay's second assignment of error, we will address the issues raised in his third and fourth assignments of error, piercing the corporate veil and retroactive application of law, since the constitutional issues would not be reached were Kays to prevail on either of theses issues. In his fourth assignment of error, Kays argues that it was error to pierce the corporate veil and impose liability on him personally. Kays argues that there was no evidence on the record to pierce the veil, and insufficient evidence on the record "for the commission to conclude that it was compelled to 'pierce the corporate veil.'" The law with respect to piercing the corporate veil is set forth in *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.* (1993), 67 Ohio St.3d 274, 617 N.E.2d 1075. "The corporate form may be disregarded and individual shareholders held liable for wrongs committed by the corporation when (1) control over the corporation by those to

be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." *Id.* at paragraph three of syllabus.

With respect to the first prong of the *Belvedere* test, the record indicates that Kays was the sole officer, shareholder, and director of Mender, Inc. Mender has never been operated as an active company. It did not have any employees, office, equipment, or accounts receivable. Its sole asset was the property. Likewise, Princh Development, Inc. is owned and controlled by Kays as its sole shareholder, officer, and director. It too is an inactive corporation, and, like Mender, Inc., the property is its sole asset. Kays stipulated to these facts. The record contains reliable, probative, and substantial evidence supporting the conclusion that neither corporation had a separate mind, will, or existence of its own, thereby meeting the first prong of the *Belvedere* test.

With respect to the second and third prongs, the EPA first contacted Kays's mother in 1988, and informed her that the tire dump was unlawful. Almost two years later, she deeded the property to Kays. The Attorney General's office first contacted Kays, who was then the owner, in 1990. The Attorney General indicated that the matter of the tire dump had been referred to him for "enforcement," and indicated that the failure to agree upon an abatement plan would result in a civil action against Kays as the owner. Thus, in 1990, Kays was on notice that the tire dump was unlawful and that he was potentially personally liable for the cleanup. He subsequently transferred the title to Mender, Inc. The company had no apparent function other than to hold the title of the property, except, as Kays now suggests, to shield him from the impending personal liability for the dump.

Kays, the sole director, officer, and shareholder of Mender, transferred the property to Princh Development in 1993. He is also the sole director, officer, and shareholder of Princh Development. Again, according to the stipulated facts, this company has no purpose other than to hold title to the property. Corporations are legal entities created to facilitate the transaction of business. However, sham corporations are legal fictions, and the fiction may be disregarded when asserted for a purpose not within the reasons and policy (of corporate law). *Belvedere* at 287, 617 N.E.2d at 1086, citing *State ex rel. Atty. Gen. v. Std. Oil Co.* (1892), 49 Ohio St. 137, 30 N.E. 279. In this case, it is clear that Kays was aware that the property contained an unlawful tire dump, and that as the owner, he was going to be held liable for a costly cleanup. Kays twice transferred the property to shell corporations that have no apparent purpose other than to shield him from

personal liability. To adopt Kays's view would be to acquiesce in allowing him to establish a corporate fiction for the purpose of avoiding liability for the unlawful dump. If liability for the cleanup is assigned to a shell corporation as opposed to Kays, the Ohio EPA will be left holding the proverbial bag for the cost of the cleanup, thus fulfilling the third prong of the *Belvedere* test. The cost of the cleanup would impose an unjust loss on the Ohio EPA and taxpayers as a result of Kays's control and acts. Potentially, such a precedent could eviscerate Ohio's environmental protection laws in that property owners could allow their property to be trashed and avoid all responsibility by simply transferring title to a shell corporation when the bill came due. However, the injury in fact is the continuing, unabated existence of the dump, which has been determined to be a risk to public health and safety. We conclude that there was reliable, probative, and substantial evidence supporting ERAC's judgment that the second and third prongs of the *Belvedere* test were met, and therefore affirm its decision to pierce the corporate veil. Kays's fourth assignment of error is without merit.

■ In his third assignment of error, Kays argues that the application of the director's final findings and orders to him is unlawful because it is a retroactive application of R.C. 3734.85. The premise of Kays's argument is that he personally held title of the property only up until April 1992. He transferred the title to Mender prior to the effective date of the statute. R.C. 3734.85 was first adopted on October 29, 1993. The current, amended version was adopted on March 30, 1995. Given that the corporate veil has been pierced for purposes of this litigation, we must evaluate the question on the basis that Kays is and has been the titleholder of the property all along. He has, in fact, owned it all along, albeit by proxy since 1992. The director's orders were issued in 1998. The law they enforce was adopted in 1995. These orders relate to the conditions on the property as they existed in 1998 and as they exist now. This is not a retroactive application of the law. Kays's third assignment of error is without merit.

In his second assignment of error, Kays argues that the application of the director's final findings and orders as applied to him is unreasonable and unlawful and violates the Equal Protection Clauses of the Ohio and United States Constitutions, the Takings Clauses of the Ohio and United States Constitutions, and Sections 1 and 16, Article I of the Ohio Constitution.

In support of his argument that the application of the director's orders to him are unreasonable and unlawful, Kays cites R.C. 3745.05, which sets forth the standard of review ERAC is to apply when conducting a hearing. That is not the standard of review this court applies to the present proceedings. Our standard of review, as set forth above, is contained in R.C. 3745.06. This court makes no judgment or determination as to whether the director's orders were "reasonable."

We do determine whether they were in accordance with the law. However, in the present assignment of error, Kays is arguing that the law is unlawful.

■ While Kays states in his assignment of error that his equal protection rights have been violated, he offers no argument or explanation as to how this is the case. Under App. R. 12(A), a court of appeals is not required to consider issues not argued in the briefs. *Toledo's Great E. Shoppers City, Inc. v. Abde's Black Angus Steak House No. III, Inc.* (1986), 24 Ohio St.3d 198, 202–203, 24 OBR 426, 429–430, 494 N.E.2d 1101, 1104–1105. Pursuant to App. R. 12(A), a court of appeals need only pass upon errors assigned and briefed when reviewing the judgment of a lower court. *Darroch v. Smythe, Cramer Co.* (Apr. 3, 1998), Lake App. No. 96–L–212, unreported, 1998 WL 258422, at fn. 7. We shall not address a nonexistent equal protection argument.

■ Kays also argues that application of the director's orders to him violates his rights under Section 16, Article I of the Ohio Constitution, which states:

"All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay."

This clause in no way guarantees that all parties will like the result of the court procedures they are entitled to. First, in the present case, the courts have been open to Kays. In fact, this is his second appeal of this matter. It is doubtful, however, that an injury has been done to him. A party cannot claim to be injured by the application to him of a valid law. He now challenges the law's validity, and this court is open to and addressing the challenge. If it is found invalid, it will not be applied to him. He will have no injury and will have had his remedy. If it is found valid, he has no injury that he can make a complaint about. Certainly, he cannot otherwise claim to have a cause of action, or of being deprived a cause of action, against the state for the existence of a dump on his property. Second, R.C. 3734.85 provides Kays with a cause of action for contribution against any other responsible parties, thereby preserving his remedies by the due course of the law. Kays's rights under Section 16, Article I of the Ohio Constitution are not being violated.

■ Finally, Kays argues that the application of the director's orders to him violates the Takings Clauses of the Ohio (Section 19, Article I) and United States Constitutions, and Section 1, Article I of the Ohio Constitution. In support of this proposition, Kays relies on *State ex rel. Pizza v. Rezcallah* (1998), 84 Ohio St.3d 116, 702 N.E.2d 81. *Rezcallah* addressed the constitutional validity of R.C. 3767.06, which was a public-nuisance-and-abatement statute directed at the use of rental properties for crack houses. Kays's analogy of his case to *Rezcallah* is weak in several areas. The statute at issue in *Rezcallah* included a forfeiture

clause. In a tightly limited ruling, the Supreme Court of Ohio struck down the forfeiture clause, stating:

"To the extent that R.C. 3767.06(A) requires a trial court, upon a finding of a nuisance, to issue an injunction closing property against its use for any purpose for one year, and to the extent that it allows release from such injunction only through the filing or renewal of a bond in the full value of the property, the statute violates the * * * Fifth Amendment Takings Clause of the United States Constitution, and Section 19, Article I of the Ohio Constitution, when applied to an owner who did not negligently or knowingly acquiesce to, and did not participate in the creation or perpetuation of the nuisance." *Id.* at paragraph two of syllabus.

The most obvious distinction is that in the present matter, there is no forfeiture clause, and the director has not attempted to close off the property to any and all use for any period of time. In *Rezcallah,* it was the mandatory property-closure provision that closed the use of property for *all* purposes, that the court found unduly oppressive, and consequently unconstitutional. *Id.* at 132, 702 N.E.2d at 93–94. But the court qualified this part of its holding in the following way:

"We find no constitutional infirmity in those portions of R.C. Chapter 3767 that grant the court discretion in the imposition of various remedies. We further find that there is no constitutional bar to the mandatory imposition of an abatement order or a permanent injunction barring the defendant from 'further maintaining the nuisance at the place complained of' pursuant to R.C. 3767.05(D) and 3767.06." *Id.* at 123–124, 702 N.E.2d at 88.

The court in *Rezcallah* ratified the constitutionality of mandatory nuisance-abatement orders of the type authorized by the statute *sub judice,* R.C. 3734.85, which do not prevent the owner from using a property for lawful purposes. Kays does not claim that he is being prevented from using the property in a lawful manner. Nor does he contest that the tire dump constitutes a danger to public health, safety, and the environment. Nor, in the present case, is there a physical invasion of his property by the government. He is simply being required to abate the nuisance that exists.

Another major distinction between *Rezcallah* and the present fact pattern is that in *Rezcallah* the court concluded that the owners of the properties were innocent parties who did not negligently or knowingly acquiesce in the creation or perpetuation of the nuisance. This fact was highly relevant to the court's determination that R.C. 3767.06 was unduly oppressive. The court noted that, in fact, a landlord is curtailed in his abilities to control the conduct of his tenants. In analogizing to *Rezcallah,* Kays rightfully points out that he did not own the property at the time the tires were dumped. However, the language of the *Rezcallah* syllabus speaks to participation in the perpetuation of a nuisance.

Kays has owned the property for over twelve years. Since he has owned it, he has done nothing to abate the nuisance or even to work out a plan for its abatement. He must have been aware of the presence of over one million tires on the property at the time he took it. Whether or not his mother informed him that she had been contacted by the EPA prior to giving him the property, he was personally contacted by the Ohio EPA about the existence of the nuisance in 1990. Being that it exists on his property, he is the only person in a position to do anything about it, absent a court order. Thus, Kays has participated in the perpetuation of the nuisance, and cannot claim to be an innocent owner like the landlords in *Rezcallah*.

We conclude that R.C. 3734.85 contains the types of remedies that the Supreme Court of Ohio approved in *Rezcallah* and that Kays's constitutional rights as set forth in the Fifth Amendment of the United States Constitution, Section 19, Article I of the Ohio Constitution, and Section 1, Article I of the Ohio Constitution have not been violated. Kays's second assignment of error is without merit.

We affirm the order of the Environmental Review Appeals Commission in all respects.

*Order affirmed.*

FORD, P.J., and NADER, J, concur.