[Cite as *State ex rel. DeWine v. Musleh*, 2013-Ohio-4323.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE EX REL. MICHAEL DeWINE, OHIO ATTORNEY GENERAL, | ) ) ) | |
| PLAINTIFF-APPELLANT, | ) ) | CASE NO. 12 MA 121 |
| V. | ) ) | OPINION |
| GHASSAN K. MUSLEH, | ) ) ) | |
| DEFENDANT-APPELLEE. | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from Court of Common
Pleas of Mahoning County, Ohio
Case No. 10CV4440

JUDGMENT:     Reversed and Remanded

APPEARANCES:
For Plaintiff-Appellant     Attorney Cameron Simmons
Attorney Clint White
Asst. Attys. General
Environmental Enforcement Section
30 E. Broad St., 25th Floor
Columbus, Ohio 43215

For Defendant-Appellee     No brief filed.

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite

Dated: September 24, 2013

DONOFRIO, J.

{¶1} Plaintiff-appellant State of Ohio appeals from a Mahoning County Common Pleas Court decision finding that defendant-appellee Ghassan Musleh did not improperly remove asbestos-containing materials from a building he owns in Youngstown, Ohio.

{¶2} Musleh owns a commercial building located at 1823-1825 Wilson Avenue in Youngstown, Mahoning County, Ohio 44506. In late 2005, the Mahoning-Trumbull Air Pollution Control Agency (MTAPCA), which contracts with the Ohio Environmental Protection Agency as the local air pollution control agency for Mahoning and Trumbull counties, received an anonymous complaint that plaster was being removed from the building. In response to the complaint, inspectors from MTAPCA inspected the building in late December 2005 and early January 2006, and took photographs and samples of suspected regulated asbestos-containing material. They observed several piles of plaster that had been stripped from the walls and crumbled plaster on the ledge of a second-story window. A tractor-trailer parked outside beneath that window contained wooden lathes and other loose plaster debris which appeared to have been removed from the walls of the building. Plaster debris was also scattered in the grass surrounding the trailer.

{¶3} Samples of plaster debris taken from piles inside the building and from the window ledge were later revealed through laboratory analysis to contain more than one percent asbestos, exceeding that allowed by law and making it what is referred to as regulated asbestos-containing material (RACM). Based upon what they observed, the inspectors determined that the RACM was being removed from the building and tossed out the window into the trailer. In sum, they concluded that it constituted an unlawful renovation resulting in the improper removal of RACM.

{¶4} On November 26, 2010, Ohio Attorney General Mike Dewine, on behalf of the state, filed a complaint in the Mahoning County Common Pleas Court seeking injunctive relief and civil penalties. The complaint set forth five counts: (1) failure to obtain a thorough asbestos inspection of a facility where a renovation operation will occur; (2) failure to notify Ohio EPA prior to commencement of renovation; (3) failure

to remove regulated asbestos-containing material from the facility prior to activity; (4) failure to have an authorized representative trained in the provision of Ohio Adm.Code Chapter 3745-20 present at the location of a renovation operation; and (5) failure to keep asbestos-containing waste material that was not removed prior to renovation adequately wet.

{¶5} The case went to trial before a magistrate and, at the magistrate's request, both parties submitted proposed findings of fact and conclusions of law. On March 27, 2012, the magistrate issued his decision, adopting Musleh's proposed findings of fact and conclusions of law. The magistrate found that there had been a removal of RACM from Musleh's building, constituting a renovation under the Ohio Adm.Code. However, the magistrate found there was no evidence that Musleh or anyone on his behalf had conducted a renovation. The magistrate found that Musleh had not violated R.C. 3704.05 and dismissed the case against him.

{¶6} The state filed objections to the magistrate's decision. On May 29, 2012, the trial court "affirmed" the magistrate's decision with certain modifications. The court found that there was evidence that there had been homeless people residing in the building. The court noted that Musleh had attempted to prevent that by removing mattresses, clothing, and other items and blocking the doors. The court found that the removal of personal property did not equate to "remodeling" and that the state had failed to present any evidence that "remodeling" was occurring or had occurred or that anyone was found on the property doing any "remodeling" work or any type of modification to the building. The court also noted that the state had failed to test any of the material in the dumpster for asbestos. This appeal followed.

## STATUTORY FRAMEWORK

{¶7} Ohio's counterpart to the federal Clean Air Act, R.C. Chapter 3704, governs air pollution control. *New Boston Coke Corp. v. Tyler*, 32 Ohio St.3d 216, 219, 513 N.E.2d 302 (1987). Under the Clean Air Act, asbestos is considered a hazardous air pollutant and there is no known safe level of exposure. 42 U.S.C. 7412; 20 U.S.C. 3601(a)(3). Asbestos handling regulations are found in Ohio

Adm.Code Chapter 3745-20 and mirror those set forth in the National Emission Standards of Hazardous Air Pollutants (NESHAP).

{¶8} Under Ohio Adm.Code Chapter 3745-20, there are certain procedures that apply to the demolition or renovation of a facility containing asbestos and to the concomitant removal of that asbestos from the facility. The owner of the facility and the operator of the demolition, renovation, and removal are required to follow procedures for notification, emission control, and waste disposal. Five of those procedures and regulations that are relevant to this appeal correspond to the five counts set forth in the complaint filed by the state against Musleh.

{¶9} First, "each owner or operator of any demolition or renovation operation shall have the affected facility or part of the facility where a demolition or renovation operation will occur thoroughly inspected by a certified asbestos hazard evaluation specialist * * * prior to the commencement of the demolition or renovation for the presence of asbestos * * *." Ohio Adm.Code 3745-20-02(A).

{¶10} Second, "[e]ach owner or operator * * * shall * * * [p]rovide the director of Ohio EPA with written notice of intention to demolish or renovate * * * [a]t least ten working days before the beginning of any demolition operation, asbestos stripping or removal work, or any other activity including salvage activities and preparations that break up, dislodge or similarly disturb asbestos material * * *." Ohio Adm.Code 3745-20-03(A)(1),(3)(a).

{¶11} Third, "[e]ach owner or operator of a demolition or renovation operation * * * shall * * * [r]emove all regulated asbestos-containing material from a facility being demolished or renovated before any activity begins that would break up, dislodge, or similarly disturb the materials or preclude access to the materials for subsequent removal." Ohio Adm.Code 3745-20-04(A)(1).

{¶12} Fourth, "[n]o regulated asbestos-containing material shall be stripped, removed, or otherwise handled or disturbed at a facility regulated by this chapter unless * * * [a]t least one authorized representative, trained in the provisions of this chapter and the means of complying with them, is present at the location of

operations." And "[e]vidence that the required training has been completed shall be posted and made available for inspection by the director or the director's representative at the demolition or renovation site." Ohio Adm.Code 3745-20-04(B)(1),(4).

**{¶13}** Fifth, "[e]ach owner or operator of any demolition [or] renovation * * * shall discharge no visible emissions to the outside air during the collection, processing (including incineration), packaging, transporting, or deposition of any asbestos-containing waste material, and * * * [a]dequately wet asbestos-containing waste material * * *."

**{¶14}** Turning to the state's appeal, it raises three assignments of error. The state's second and third assignments of error will be addressed out of order for ease of analysis. Also, it should be noted that Musleh has failed to file a brief in this matter. Therefore, we may accept state's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action. App.R. 18(C).

### RENOVATION & REMOVAL

**{¶15}** In its first assignment of error, the state argues:

The trial court erred as a matter of law by failing to apply the correct definition of "renovation" as required by the Ohio Administrative Code.

**{¶16}** The trial court modified the magistrate's decision by expanding on what it thought the evidence showed was occurring at Musleh's building:

The Court finds that removal of personal property is not the equivalent of remodeling. The Court finds the State of Ohio failed to present any evidence that remodeling had occurred or was occurring. The State of Ohio did not present evidence that anyone was found on the property doing remodeling work or any type of modification to the

building.

**{¶17}** The state contends that the trial court's use of the terms "remodeling" and "modification" reflect that it applied the wrong definition or standard in evaluating the activity that was going on at Musleh's building.

**{¶18}** Ohio regulations define renovation as "altering a facility or one or more facility components in any way, including the stripping or removal of regulated asbestos-containing material from a facility component." Ohio Adm.Code 3745-20-01(B)(44). Remove means "to take out regulated asbestos-containing material or facility components that contain or are covered with regulated asbestos-containing material from any facility." Ohio Adm.Code 3745-20-01(B)(43).

**{¶19}** Interestingly, right after the magistrate set forth both of these definitions verbatim in his decision, he went on to find that the "activity that occurred at the Wilson Avenue structure prior to December 28, 2005 is a 'removal,' as defined in Ohio Adm.Code 3745-20-01(B)(43), which is specifically identified as an activity meeting the definition of 'renovation,' as defined in Ohio Adm.Code 3745-20-01(B)(44)." However, the magistrate concluded that Musleh did not conduct a renovation, nor did he have anyone conduct a renovation on his behalf.

**{¶20}** The state misconstrues the import of the trial court's use of the "remodeling" and "modification" terms. As indicated, it is clear that the magistrate used the correct definitions – he set them forth in his decision verbatim from the Ohio Adm.Code. While employing slightly different terminology in its affirmance and modification of the magistrate's decision, it does not appear that the trial court used a different standard or definition in evaluating the evidence. It appears that the trial court just viewed the evidence differently than the magistrate and rejected the state's contention that the evidence showed that asbestos was, in fact, removed from the building. In other words, regardless of the terminology employed by the trial court, it still used the same correct definitions as set forth by the magistrate to reach a different conclusion of what it felt the evidence showed.

**{¶21}** Accordingly, the state's first assignment of error is without merit.

## WEIGHT OF THE EVIDENCE

{¶22} The state's third assignment of error states:

To the extent the trial court held that the State failed to present evidence of a renovation, the trial court's ruling was against the manifest weight of the evidence.

{¶23} The state argues that the trial court erred in finding that it had failed to present any evidence that a renovation or remodeling was occurring at Musleh's building. The state points to the evidence it introduced that there was asbestos contaminated plaster in piles on the second floor of the building, scattered on the ledge of a second floor window, and scattered on the grass surrounding the trailer into which wooden lathes and plaster had been thrown.

{¶24} "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

{¶25} In this case, each of the five counts alleged that Musleh, as owner of the building containing regulated asbestos-containing material, failed to take certain actions concerning that asbestos. While the magistrate acknowledged that a renovation and removal of asbestos had occurred at the building, he concluded that Musleh himself was not the person who had caused the renovation and removal to take place. The trial court concluded that Musleh was not liable on any of the counts because of its finding that no renovation or removal of asbestos had taken place at the building. Thus, under this assignment of error, we will limit our review to the question of whether there was competent, credible evidence that a renovation and removal of asbestos had occurred at the building. The question of Musleh's liability thereunder will be addressed in the next assignment of error.

{¶26} Ohio Adm.Code 3745-20-01(B)(44) defines renovation, in relevant part, as "altering a facility or one or more facility components in any way, including the

stripping or removal of regulated asbestos-containing material from a facility component." Ohio Adm.Code 3745-20-01(B)(43) defines removal, in relevant part as "to take out regulated asbestos-containing material or facility components that contain or are covered with regulated asbestos-containing material from any facility."

{¶27} The testimony of the state's witnesses and the photographs they took showed that someone had removed plaster from some of the walls on the second story of Musleh's building. There was a pile of plaster on the floor of the second story and there was plaster on the window sill of a second story window both of which contained prohibited levels of asbestos. Beneath that window outside was a trailer containing wooden lathes which appeared to have been torn from the walls of the second story and thrown into the trailer from that second story window. There was also some plaster debris in the trailer which the state's witnesses were unable to get to and test for asbestos. However, the plaster debris recovered from the building and the grass surrounding the trailer did test positive for prohibited levels of asbestos.

{¶28} Consequently, the trial court erred in concluding that the state had failed to present *any* evidence that a renovation (or as it termed "remodeling") had occurred at Musleh's building. Indeed, there was competent, credible evidence establishing (as the magistrate correctly observed) that the activity that occurred at the building was a "removal," as defined in Ohio Adm.Code 3745-20-01(B)(43), which is specifically identified as an activity meeting the definition of "renovation," as defined in Ohio Adm.Code 3745-20-01(B)(44).

{¶29} It appears that just because the trial court found that the state had failed to "present evidence that anyone was found on the property doing remodeling work or any type of modification to the building," it concluded that the state had "failed to present *any* evidence that remodeling had occurred or was occurring." (Emphasis added.) The trial court's view of the state's case in this regard ignores the aforementioned direct and circumstantial evidence that the state put forward demonstrating that someone had caused a violation to occur at Musleh's building. To that extent, the state presented competent, credible evidence that a renovation and

removal of asbestos occurred at Musleh's building constituting a violation of Ohio's asbestos rules.

**{¶30}** Accordingly, the state's third assignment of error has merit. The question then becomes whether the trial court should have found Musleh himself liable for those violations that occurred at his building regardless of his knowledge or culpability in those violations, which leads us to the state's second assignment of error.

## STRICT LIABILITY

**{¶31}** The state's second assignment of error states:

> The Trial Court erred as a matter of law by failing to impose strict liability upon the Defendant as the owner of the Wilson Avenue structure.

**{¶32}** As the owner of the building, the state argues that Musleh should be held strictly liable for violations of the asbestos rules that occurred there regardless of his alleged lack of knowledge of the violations or his assertion that he did not authorize any activity at that building that would constitute a violation.

**{¶33}** He testified that he purchased the building in order to prevent someone else from buying it and opening a store that would compete with his convenience store nearby. (Tr. 127.) His intent was to leave the building vacant. (Tr. 127-128.) Concerning what he did or directed other people to do in the building, he testified further:

> Q    Did you ever actually even set foot in this property?
>
> A    Maybe once or twice.
>
> Q    Okay. So you had never even really been in there yourself.
>
> A    Not really. Not to go in there and do anything, no.
>
> Q    Okay. Did you ever intend to conduct any construction in

that building.

A      No.

Q      Did you ever intend to remodel the building?

A      No.

Q      Now, why was there a trailer outside the building?

A      I was actually trying to stop anyone from going in there. I didn't need any liabilities or have anyone getting hurt in there. So I was going to remove all the clothes and the mattresses that were in the building.

Q      Were you personally going to do that?

A      No.

Q      Who was going to do it then?

A      I had some people from the store, that come in the store, that I just told them to remove the mattresses and the clothes and stop anyone from going in there.

      * * *

Q      Now, how did the trailer get there?

A      I don't know anything about the trailer. I just needed to -- I told them to remove the clothes and the mattresses. And they -- I guess they got a friend or somebody to help them.

Q      So you asked these people to go over there and simply remove garbage?

A      Yes.

Q      You didn't ask them to strip the walls?

A      No.

Q      You didn't ask them to remove any construction materials, correct?

A      No.

Q      You didn't ask them to remove anything containing

asbestos, correct?

      A      No.

(Tr. 128-131.)

**{¶34}** Musleh went on to explain that once he learned from MTAPCA that the building contained asbestos, he contacted a company that handles asbestos removal and had that company properly remove the asbestos for him before having the building demolished. (Tr. 132.)

**{¶35}** As discussed under the state's third assignment of error, there was competent, credible evidence that the violations the state alleged in their complaint against Musleh occurred at Musleh's property. While Musleh's testimony certainly supports the notion that he may have lacked knowledge of the violations occurring at his property, as the owner of the property he is nevertheless held strictly liable under R.C. Chapter 3704 and the Clean Air Act for those violations. *See*, *e.g.*, *State ex rel. Petro v. Mercomp*, 167 Ohio App.3d 64, 2006-Ohio-2729, ¶¶ 39-43 (8th Dist.).

**{¶36}** R.C. 3704.05(A) provides that "[n]o person shall cause, permit, or allow emission of an air contaminant in violation of any rule adopted by the director of environmental protection * * *." And R.C. 3704.05(G) provides that "[n]o person shall violate any order, rule, or determination of the director issued, adopted, or made under this chapter." The asbestos rules found in Ohio Adm.Code 3745-20 were adopted pursuant to R.C. Chapter 3704.

**{¶37}** The Clean Air Act's central purpose is "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. 7401(b)(1). To that end, the legislature enacted the civil penalty provision to provide strict liability for violations of the Act:

> [T]he Act and the asbestos NESHAP provide strict liability for civil violations of their provisions. This reading is supported by the language of the Act, the legislative history of the Act and cases

construing the Act and emission standards promulgated thereunder. Strict liability is essential to meet the purpose of the Act to protect and improve the quality of the nation's air.

(Internal quotations and citations omitted.) *Beerman Realty Co. v. Alloyd Asbestos Abatement Co.*, 100 Ohio App.3d 270, 275, 653 N.E.2d 1218 (2d Dist.1995). "Courts have consistently held that the civil penalty provision imposes strict liability on both owners and operators." *Id.*

**{¶38}** The legislative history of the civil penalty provision of the Clean Air Act explains the policy behind strict liability and how its apparent harsh treatment of violators lacking any actual knowledge of the violations could be addressed:

[W]here protection of the public health is the root purpose of a regulatory scheme (such as the Clean Air Act), persons who own or operate pollution sources in violation of such health regulations must be held strictly accountable. This rule of law was believed to be the only way to assure due care in the operation of any such source. Any other rule would make it in the owner or operator's interest not to have actual knowledge of the manner of operation of the source. Moreover, in the Committee's view, the public health is injured just as much by a violation due to negligence or inaction as it is by a violation due to intent to circumvent the law. Thus, the Committee believes that the remedial and deterrent purposes of the civil penalty provision would be better served by not limiting its application to 'knowing' violations.

*[T]he Committee intends to permit any argument about the violator's knowledge, intent, negligence, or culpability to be considered by the courts in deciding how much to fine any violator, rather than in determining whether any enforcement action can be brought in the first place.*

(Emphasis added.) H.R.Rept. No. 94-1175, 94th Cong., 2d Sess., at 53.

{¶39} In sum, as indicated earlier under the state's third assignment of error, the state presented competent, credible evidence establishing a renovation and removal of regulated asbestos-containing material from Musleh's building. Furthermore, in step with the Clean Air Act and federal law, Ohio law imposes strict liability for violations of its version of the Act found in R.C. Chapter 3704. Therefore, because Musleh is the owner of the building, he is strictly liable for any violations stemming from the renovation and removal of regulated asbestos-containing material from the building. To the extent that Musleh lacked any knowledge of those violations, the trial court is free to consider that in determining how much to fine Musleh, but it was not permitted to consider that in determining whether any enforcement action should have been brought in the first place.

{¶40} Accordingly, the state's second assignment of error has merit.

{¶41} The judgment of the trial court is reversed and the case remanded with instructions to enter judgment finding Musleh strictly liable on counts one through five and for a determination of a fine or fines for those violations at the trial court's discretion. In any other respects, the case is remanded for further proceedings according to law and consistent with this court's opinion.

Vukovich, J., concurs.

Waite, J., concurs.